957 F.2d 78
 15 Employee Benefits Cas. 1132
 Leonard L. FINZ, Plaintiff-Appellant,
v.
Stuart A. SCHLESINGER, Julien, Schlesinger and Finz, P.C.,
Julien and Schlesinger, P.C., Julien and Schlesinger, Stuart
A. Schlesinger d/b/a Julien and Schlesinger P.C., the Julien
and Schlesinger Employee Retirement Fund, the Julien and
Schlesinger P.C. Employees Retirement Trust, and Plan Doe,
Defendants-Appellees.
 No. 585, Docket 91-7692.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 3, 1991.
Decided Feb. 25, 1992.
 
 Norman E. Frowley, New York City (Law Offices of Leonard L. Finz, P.C., of counsel), for plaintiff-appellant.
 Gary P. Naftalis, New York City (Jonathan M. Wagner, Kramer, Levin, Nessen, Kamin & Frankel, of counsel), for defendants-appellees.
 Before TIMBERS, MINER and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Leonard L. Finz appeals from a judgment entered in the United States District Court for the Southern District of New York (Kenneth Conboy, Judge), granting defendants-appellees', Julien, Schlesinger and Finz, P.C., Julien and Schlesinger, P.C., Julien and Schlesinger, Stuart A. Schlesinger d/b/a Julien and Schlesinger P.C., The Julien and Schlesinger P.C. Employees Retirement Trust, The Julien and Schlesinger Employee Retirement Fund, and Plan Doe (collectively "defendants"), motion for summary judgment and dismissing the complaint against them. Finz initiated the underlying action against defendants, claiming, among other things, that they unlawfully deprived him of pension benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. (1988) ("ERISA"). Specifically, Finz contended that defendants wrongfully led him to believe that he was not covered by Julien & Schlesinger's retirement plans and thus fraudulently induced him to sign a waiver releasing them from liability for payments under these plans.
 
 
 2
 The district court rejected Finz' argument, concluding that it was clear from Finz' waiver that he understood he might have been covered by the pension plan, but had nevertheless waived his claims. Thus, the district court found that he could not maintain his action for damages under ERISA. The court also dismissed his common law claims of fraud and conspiracy on this basis.
 
 
 3
 For the reasons set forth below, we affirm the judgment of the district court.
 
 BACKGROUND
 
 4
 In January 1978, Leonard L. Finz, who was then an acting New York State Supreme Court Justice in Queens County, left the bench and joined the law firm of Julien & Schlesinger, P.C., as a trial attorney. Thereafter, the firm's name was changed to Julien, Schlesinger & Finz, P.C. According to Finz, he was induced to enter private practice, in part, because he wanted a guaranteed pension. For approximately seven years Finz worked for the firm as a trial attorney.
 
 
 5
 On April 10, 1984, Finz left the firm and formed a partnership with Michael Wolin, the former managing partner of Julien & Schlesinger. Finz alleges that he left the firm over a conflict with defendants concerning his eligibility for pension benefits.
 
 
 6
 Subsequently, on May 4, 1984, Finz entered into an agreement with defendants designed to resolve his differences with them amicably and to avoid litigation over any potential claims. The agreement addressed Finz' claims regarding pension benefits, as well as his rights as to various clients and his allegation that he was entitled to a stock and equity interest in the firm. With regard to Finz' pension claims, the agreement specifically stated:
 
 
 7
 [Finz] states that to his knowledge and during or prior to the period of his employment with J & S or J S & F, he was neither issued, nor did he receive any stock interest in the "JULIEN & SCHLESINGER EMPLOYEE RETIREMENT FUND DATED JUNE 11,11, 1974" or any other pension or profit sharing plan which may have existed or any parties claim to have existed with regard to the firms of J S & F and J & S, which [Finz] claims was in existence during the period of his employment with J S & F and as such is or was entitled to the benefits thereunder provided as a covered employee....
 
 
 8
 As a consequence of the dispute which exists based upon the claims made by [Finz] and the denials of those claims by [Julien, Schlesinger,] J S & F and J & S as set forth in this paragraph, the aforenamed [Julien, Schlesinger,] J S & F and [Finz] hereby resolve, settle and compromise their differences as evidenced by the general releases executed by [Finz] and the remaining parties to this Agreement as consideration therefore, annexed hereto as Appendix "A."
 
 
 9
 Agreement p 8. Finz was paid $75,000 upon execution of the entire agreement and the general releases annexed to it. Agreement p 11. In the same agreement, Michael Wolin, Finz' partner, agreed that he did not have any stock ownership interest in the firm or in the firm's pension plan.
 
 
 10
 Approximately five years later, in July 1989, Finz discovered a photocopy of a check made out to Michael Wolin dated November 4, 1983 and drawn on the account of "Julien & Schlesinger, P.C. Employees Retirement Fund." Because Finz assumed that he had been in the same position as Wolin with regard to the firm's pension plan, Finz once again began to assert that he had been fraudulently deprived of his retirement benefits.
 
 
 11
 Accordingly, Finz initiated the underlying action against the defendants, claiming that they had deprived him of pension benefits in violation of ERISA. Additionally, Finz alleged common law fraud and conspiracy. In response, the defendants moved to dismiss the complaint, arguing that the action was barred by the release agreement and by the applicable statute of limitations. The district court found that the releases did not foreclose Finz from bringing the action, since Finz claimed that he was fraudulently induced to enter the agreement and sign the releases. Additionally, the district court denied the defendants' motion to dismiss on statute of limitations grounds, concluding that it could not rule on this claim until discovery was conducted. Thus, the district court entered an order denying defendants' motion.
 
 
 12
 Subsequently, the defendants moved for reconsideration of the court's order and the district court granted the motion. On reconsideration, the district court found that when he executed the release, Finz was of the belief that he was covered under the firm's plan. Nevertheless, he executed the release in return for substantial consideration. Thus, the district court found that because Finz did not enter into the agreement as a result of defendants' representations, he could not now argue that his waiver was negated by his discovery that he probably had been entitled to plan benefits. The court also found that Finz' common law fraud and conspiracy claims were meritless. Consequently, the court granted the defendants' motion for summary judgment and dismissed the complaint.
 
 
 13
 This appeal followed.
 
 DISCUSSION
 
 14
 In reviewing a district court's grant of summary judgment, we consider whether the court below properly concluded that there existed "no genuine issue as to any material fact" and that the prevailing party was "entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). We review the district court's decision de novo. See P.C. v. McLaughlin, 913 F.2d 1033, 1040 (2d Cir.1990).
 
 
 15
 Here, the district court determined that based on the language of the agreement, as well as the circumstances surrounding its execution, Finz had knowingly relinquished all potential ERISA claims. Essentially, the district court reasoned that the language of the agreement, stating that Finz waived all interest in employee pension funds that he "claim[ed] w[ere] in existence during the period of his employment with [defendants]," clearly indicated that at the time he signed the agreement Finz believed that he was entitled to a pension despite defendants' representations to the contrary. Thus, the district court concluded that Finz' subsequent discovery of information confirming his belief that he had been covered by the pension plan did not vitiate his waiver. We agree.
 
 
 16
 Initially, we note that defendants invite us to analyze the validity of Finz' waiver of pension benefits using a traditional contract analysis. Defendants claim that because Finz' waiver of pension plan benefits was a part of a general settlement and release agreement signed after the parties had already ended their relationship, we should apply general contract principles to determine the waiver's effectiveness. We, like the district court, decline defendants' invitation.
 
 
 17
 The validity of an individual's waiver of pension benefits is subject to closer scrutiny than his or her waiver of general contract claims. See Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1365 (2d Cir.1991). Because individuals waiving pension benefits claims "are relinquishing [rights] that ERISA indicates a strong congressional purpose of preserving," id. at 1367, we have required close inspection of the totality of circumstances surrounding a waiver of ERISA benefits. See id; see also Leavitt v. Northwestern Bell Telephone Co., 921 F.2d 160, 162 (8th Cir.1990). Thus, we cannot conclude that merely because a pension benefit waiver is embedded within a larger agreement concluded after employment has ceased, we should review its validity under a standard that is any less strict.
 
 
 18
 We recently held in Laniok that an individual can waive his or her right to participate in a pension plan governed by ERISA only if his or her waiver "is made knowingly and voluntarily." Laniok, 935 F.2d at 1365. In that case, we reviewed a district court's determination that no disputed issue of fact existed as to whether a tool and die worker, who had signed a waiver of pension benefits prior to joining a company, had effectively waived any right he had to a pension. We noted six factors that may be examined to determine whether a plaintiff who waives benefits covered under ERISA acted knowingly and voluntarily:
 
 
 19
 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.
 
 
 20
 Id. at 1368 (quoting Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir.), cert. denied, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989)). We recognized, however, that this list of factors was not exhaustive and that "the circumstances to which these factors apply will differ if the waiver at issue is agreed to by a prospective employee rather than a current employee." Id.
 
 
 21
 In this case, the district court, which issued its judgment prior to our decision in Laniok, considered essentially these factors and concluded that Finz' waiver was knowing and voluntary. The district court found that Finz, a former New York State Supreme Court Justice, was well-educated, understood the terms of the agreement, had ample opportunity to consider the agreement and was given substantial consideration--i.e., some fraction of $75,000--to execute the waivers at issue. Moreover, the district court noted that the releases were negotiated at arms length and that there was no indication that Finz was denied the opportunity to consult with an attorney about his rights under ERISA. With regard to the completeness and accuracy of defendants' disclosure, the court concluded that Finz was fully aware of his claim against the plan. In sum, the district court found that Finz' waiver was valid.
 
 
 22
 Finz challenges this conclusion, however, contending that his waiver could not have been "knowingly" made, because defendants failed to inform him of the terms of the plan. In essence, Finz claims that the defendants' alleged failure to provide him with plan documents violated ERISA and voided his waiver. We disagree.
 
 
 23
 It is well-established that the trustees of a pension plan have an obligation to provide plan participants with summary plan descriptions upon request. See 29 U.S.C. § 1132(c); see also 29 U.S.C. § 1104. The question arises, however, whether this obligation extends to a "potential plan participant," i.e., an individual, such as Finz, whose coverage is in doubt. Although ERISA does not speak to this issue directly, we believe that plan trustees have a general obligation to provide potential plan participants who request plan descriptions with adequate information about the plan. Cf. Gaynor v. Ephrata Community Hosp., 690 F.Supp. 373, 379 (E.D.Pa.1988). Because "[t]he primary purpose of [ERISA] is the protection of individual pension rights," H.R.Rep. No. 533, 93rd Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, it is only logical that a pension plan's trustees owe at least some duty to a potential plan participant to facilitate the determination of whether he or she has rights under the plan.
 
 
 24
 Based on the allegations of the complaint, we can surmise that defendants, by repeatedly ignoring Finz' requests for plan documents, shirked their responsibility. Nevertheless, the district court concluded that "to the extent Finz was not adequately informed of the details of the ERISA plan, he waived his right to be so informed when [he] enter[ed] into the settlement agreement." We agree with the district court's determination that in this case, defendants' failure to provide Finz with a summary plan description does not nullify his waiver.
 
 
 25
 Reviewing the circumstances here presented, we conclude that there is no question that Finz knew that he may have been covered under the plan when he relinquished his benefits. Basically, as a result of an impasse between the parties over Finz' potential plan participation, an agreement was reached such that litigation could be avoided. As is evidenced by the language of the agreement itself, Finz understood that his waiver would settle the parties' dispute over his coverage under the plan. The agreement states:
 
 
 26
 As a consequence of the dispute which exists based upon the claims made by [Finz] and the denials of those claims by [Julien, Schlesinger,] J S & F and J & S as set forth in this paragraph, the aforenamed [Julien, Schlesinger,] J S & F and [Finz] hereby resolve, settle and compromise their differences as evidenced by the general releases executed by [Finz] and the remaining parties to this Agreement as consideration therefore, annexed hereto as Appendix "A."
 
 
 27
 Agreement p 8 (emphasis added). Indeed, at a related proceeding in 1990, Finz testified that he left the firm as a result of a dispute over his pension benefits, suggesting that he never accepted defendants' representations and in fact believed that he was covered by the plan. Thus, Finz cannot now claim that the revelation of the check to Wolin--which to his mind confirmed his belief as to his eligibility for plan participation--completely negates his waiver.
 
 
 28
 As we held in Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 527 (2d Cir.1985), a plaintiff who has settled a claim involving fraud may not subsequently assert that he or she is not bound by the settlement because the extent of the fraud was not fully disclosed. Although Bellefonte did not involve an ERISA based claim, we nevertheless believe that it is fully applicable to this situation. Finz, who at all times believed that defendants were misrepresenting his entitlement to benefits, should not be permitted to strike a better bargain at this late date by claiming that he signed the agreement in reliance on defendants' misrepresentations. Cf. Bormann, 875 F.2d at 404.
 
 
 29
 We do not intend to suggest that a plan trustee's failure to turn over requested plan documents to a potential participant could never, in and of itself, nullify a waiver executed by a potential plan participant. Where, for example, application of the Laniok factors indicate that there is a great disparity in the education or the bargaining power of the parties, the plan trustee's failure to provide a potential participant with requested information could be dispositive. Indeed, we believe that once a potential plan participant demands a summary plan description from a plan trustee, a heavy burden should be placed on the trustee to show whether the information was provided and, if it was not, to give a detailed explanation why it was not furnished. Here, however, defendants' failure to provide Finz with details of the pension plan is not dispositive, since it is clear that Finz, an astute lawyer, knew exactly the bargain he was making. We therefore agree with the district court's determination that Finz' waiver of any claim to benefits under the pension plan is valid, thus depriving him of any ERISA-based cause of action.
 
 
 30
 Finally, Finz contends that the district court erred by addressing the merits of his pendent state law claims, even though it dismissed his federal cause of action. We disagree. A district court's decision to retain jurisdiction over a pendent state claim, once it has determined that the underlying federal claim should be dismissed, is reviewed under an abuse of discretion standard. See Carnegie Mellon University v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); Mayer v. Oil Field Sys. Corp., 803 F.2d 749, 757 (2d Cir.1986); see also McLearn v. Cowen & Co., 660 F.2d 845, 850 (2d Cir.1981) (Lasker, J., concurring). We review such decisions by considering whether judicial economy, convenience, fairness and comity require a different result. See Carnegie Mellon, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.
 
 
 31
 Here, the district court's decision on the ERISA cause of action involved findings which related to Finz' common law claims. It would have thus been inefficient for the district court not to have addressed the merits of the state law issues. Accordingly, we do not believe that the district court abused its discretion in this regard.
 
 CONCLUSION
 
 32
 We have examined all of Finz' remaining arguments and find them to be without merit. Thus, based on the foregoing, we affirm the judgment of the district court.