Tracey LOSQUADRO, Joseph Cavalieri, Anthony Senia, Andrew Jeacoma, Michael DeSena and Joseph Riccardo, as members of the General Building Laborers, Local Union No. 66 and Participants in and Beneficiaries of the General Building Laborers' Local Union No. 66 Training Fund, Plaintiffs,

v.

FGH REALTY CREDIT CORPORATION, General Building Laborers' Local Union No. 66 L.I.U.N.A. AFL–CIO, Paul O'Brien, Eugene Messina, Gerald Losquadro and David Elabor, as Trustees of the General Building Laborers' Local Union No. 66 Training Fund, General Building Laborers' Local Union No. 66 Building Corporation, Michael LaBarbara, Jr., James Abbatiello, Sr. and Peter Vario, individually and as former Trustees of the General Building Laborers' Local Union No. 66 Training Fund, former Officers and Members of the Executive Board of the General Building Laborers' Local Union No. 66 and former Officers and Directors of the General Building Laborers' Local Union No. 66 Building Corporation, Defendants.

No. CV 96–1692 (ADS).

United States District Court,
E.D. New York.

March 15, 1997.

Spivak, Lipton, Wanatabe, Spivak & Moss, New York City (Franklin K. Moss, Leonard David Egert, of counsel), for Plaintiffs.

Herrick, Feinstein L.L.P., New York City (Mara Levin, of counsel), for Defendant FGH Realty Credit Corporation.

Proskauer Rose Goetz & Mendelsohn, L.L.P., New York City (Steven A. Beede, of counsel), for Defendant Current Trustees of the General Building Laborers' Local No. 66 Training Fund.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from the claims of the plaintiffs, Tracey Losquadro, Joseph Cavalieri, Anthony Senia, Andrew Jeacoma, Michael DeSena and Joseph Riccardo (the "plaintiffs"), as members of the General Building Laborers' Local Union No. 66 (the "Union") and participants and beneficiaries of the General Building Laborers' Local Union No. 66 Training Fund (the "Training Fund" or "Fund,"), against the defendants FGH Realty Credit Corporation ("FGH"), the Union, Paul O'Brien, Eugene Messina, Gerald Losquadro and David Elabor as Trustees of the Training Fund, the General Building Laborers' Local Union No. 66 Building Corporation (the "Building Corporation"), and Michael LaBarbara, Jr., James Abbatiello, Sr. and Peter Vario, (the "Former Trustees") individually and as the former trustees of the Training Fund and former Officers and members of the Executive Board of the Union and of the Building Corporation's Board of Directors, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., and related state law.

Presently before the Court is the motion of the defendant FGH to dismiss the plaintiffs' ERISA claims pursuant to Fed.R.Civ.P., 12(b)(6) for failure to state a claim based on the statute of limitations and Fed.R.Civ.P. 12(b)(1) based on lack of subject matter jurisdiction over the pendent state law claims.

## I. *Background*

### A. *The parties*

The following facts are taken from the amended complaint. The plaintiffs are Union members and participants and beneficiaries of the Training Fund. Defendant FGH is a New York corporation with its principal place of business in New York City. The

Union is a local chapter of the Laborers' International Union of North America with an office in Melville, New York.

Paul O'Brien, Eugene Messina, Gerald Losquadro and David Elabor are the current Trustees of the Training Fund (the "Current Trustees"), a jointly-trusted employee benefit fund within the meaning of ERISA. The Training Fund has an office at the same address as the Union in Melville.

The Building Corporation is a not-for-profit corporation organized under New York law. The Union is the owner of the stock of the Building Corporation which holds the corporate stock in trust for the Union membership. The sole asset of the Building Corporation is the Union headquarters located in Melville.

According to the amended complaint, at all times relevant to this litigation, Michael La-Barbara, Jr. was a Trustee, Secretary of the Board of Trustees of the Training Fund, Business Manager and member of the Union's Executive Board, and President and member of the Building Corporation's Board of Directors. Similarly, James Abbatiello was, at all relevant times a Trustee and a member of the Board of Trustees of the Training Fund, Assistant Business Manager and a member of the Union's Executive Board, and the Secretary and a member of the Board of Directors of the Building Corporation. Peter Vario was a Trustee and a member of the Board of Trustees of the Training Fund and Vice President and a member of the Union's Executive Board. He also served as the Treasurer and a member of the Board of Directors of the Building Corporation. As a result of their occupying these various positions, the plaintiffs claim that the Former Trustees were fiduciaries of both the Union and the Training Fund.

According to the amended complaint, the remaining defendants, specifically the Union, the Current Trustees and the Building Corporation, are "named as ... defendant[s] herein for relief purposes only."

## B. *The underlying loan transaction*

In December 1986, the Training Fund purchased a parcel of real property located in Medford, New York (the "Medford Property") in order to build a "training facility." The purpose of this facility is not described. The purchase was financed in part by a $2.5 million dollar building loan entered into by the Training Fund and National Westminster Bank U.S.A. ("NatWest"), which was secured by a mortgage. In 1989, with the construction almost complete, the Training Fund attempted to convert the loan into a long term financing. NatWest declined, instead offering to contact defendant FGH to investigate the possibility of such financing.

Sometime in September 1989, Training Fund representatives approached FGH to determine whether it would be willing to extend a $4 million long term loan to the Fund. The loan would be secured by a mortgage on the Medford Property. FGH declined unless the Union headquarters located in Melville (the "Melville Property") was also offered as collateral. By letter dated September 13, 1989 (the "Approval Letter"), FGH's Vice President, Vincent J. Gatto ("Gatto"), advised LaBarbara that he "would endeavor to obtain approval" of the loan conditioned upon "among other things, a first mortgage on both the Melville and Medford Properties, the posting with FGH for the duration of the Loan of a certificate of deposit in the amount of $500,000, and a full repayment guaranty from the Union." Compl. ¶ 15. On October 12, 1989, a commitment letter was signed by Gatto setting forth FGH's approval of the $4 million loan and the related security interests conveyed to FGH including the two mortgages on the Medford and Melville Properties. The commitment letter was executed by LaBarbara on behalf of the Fund. Subsequently, FGH discovered that title to the Melville Property belonged to the Building Corporation and refused to proceed unless the Building Corporation was included as a "co-borrower" willing to grant the mortgage on the Melville Property. The Former Trustees agreed.

By letter dated October 24, 1989, Jeffrey Dubin, Esq., counsel for the Training Fund, Union and Building Corporation, provided Benjamin Weinstock, Esq., FGH's outside counsel, with a "self described 'score card'" of the entities involved in the above de-

scribed loan transaction. This letter advised FGH that: (1) the Training Fund was the borrower and owner of the Medford Property; (2) the Building Corporation was owner of the Melville Property; and (3) the Union was the guarantor.

On November 20, 1989, the loan transaction closed. At that time FGH was provided with the following certifications from the Union, Training Fund and Building Corporation, which were executed by LaBarbara and Abbatiello:

1. That at a special meeting held on November 15, 1989, the Training Fund Trustees unanimously approved the $4 million loan from FGH and the first mortgage on the Medford Property and authorized LaBarbara to execute all necessary documents;

2. That at a special meeting held on November 15, 1989, the Union Executive Board unanimously authorized the guarantee of the loan from FGH and authorized LaBarbara to execute all necessary documents; and

3. That at a special meeting on held on November 15, 1989, the Building Corporation's Board of Directors unanimously authorized the FGH loan and a first mortgage on the Melville Property and authorized LaBarbara to execute all necessary documents.

At the closing, FGH transferred $4 million to the Training Fund. In exchange, FGH received a first mortgage on the Medford and Melville properties, a "purported full repayment Guaranty" from the Union, and security deposit of $500,000, including a pledge from the Union in the form of a certificate of deposit in the amount of $250,000. The transaction is evidenced by a "Mortgage and Agreement of Consolidation, Spreader, Modification and Extension of Mortgage" from the Training Fund and Building Corporation in the sum of $4 million, a "Substitute Promissory Note" from the Training Fund and Building Corporation, a "Guaranty of Payment" by the Union, Training Fund and Building Corporation, and a "Pledge and Security Agreement" from the Union and Training Fund. These docu-

ments are all dated November 20, 1989 and were executed by defendant LaBarbara.

On September 29, 1989, prior to the execution of the loan transactions set forth above, defendants LaBarbara and Abbatiello pled guilty to various counts of a criminal indictment alleging among other things, accepting illegal payoffs from employers of Union members in violation of the Taft–Hartley Act, 29 U.S.C. § 186(b)(1). LaBarbara pled guilty to six felony counts of accepting illegal payoffs, and Abbatiello pled guilty to two felony counts and one misdemeanor count of accepting illegal payoffs and one felony count of obstruction of justice. The plaintiffs allege that these guilty pleas received wide media coverage.

On June 26, 1995, FGH initiated an action, against the Training Fund, Union and Building Corporation among others, seeking a foreclosure judgment and sale of the Medford and Melville properties. Further, FGH sought judgment against the Training Fund and Building Corporation as borrowers and the Union as Guarantor for joint and several liability on any outstanding indebtedness after the sale of the properties. The disposition of this action is not set forth in the amended complaint.

According to the amended complaint, the loan transaction, the certifications described above and the closing were "fraudulently concealed from Plaintiffs, the general membership of the Union, and the participants and beneficiaries of the Training Fund, and were entered into in violation of Defendants' fiduciary duty and in excess of their authority." Compl. ¶ 21. Further, the plaintiffs allege that FGH knew or should have known that the special meetings described in the certifications provided at the closing did not occur and that the governing bodies of the Union, Training Fund and Building Corporation never authorized the FGH loan.

Based on these allegations, the plaintiffs assert the following causes of action: (1) breach of fiduciary duty against LaBarbara, Abbatiello and Vario under ERISA; (2) equitable relief based on breach of fiduciary duty under ERISA against FGH; (3) participation in prohibited transactions under ERISA against FGH, the Former Trustees, the Un-

ion, Current Trustees and Building Corporation; (4) and (5) a declaratory judgment against FGH, the Former Trustees, the Union, Current Trustees and Building Corporation; (6) conversion against FGH; (7) breach of fiduciary duty under New York State law against LaBarbara, Abbatiello and Vario; and (8) breach of fiduciary duty under New York State law against FGH.

Presently before the Court is FGH's motion to dismiss the plaintiffs' ERISA claims pursuant to Fed.R.Civ.P., 12(b)(6) for failure to state a claim based in the statute of limitations and Fed.R.Civ.P. 12(b)(1) based on lack of subject matter jurisdiction over the pendent state law claims.

## II. *Discussion*

### A. *Rule 12(b)(6) standard*

A complaint is to be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994); *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function . . . is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *La Bounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

### B. *FGH's motion*

#### 1. *The ERISA claims*

■ FGH moves to dismiss the plaintiffs' ERISA claims against it on statute of limitations grounds. The parties agree that this subject is governed by ERISA's statute of limitations for breach of fiduciary duty claims, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> *except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.*

29 U.S.C. § 1113 (emphasis added).

Applying these provisions, FGH argues that the "last date which constituted a part of the breach or violation" is "the last date as of which funds are disbursed." Def. Mem. of Law at 12; *see Davidson v. Cook,* 567 F.Supp. 225, 234 (E.D.Va.1983), *aff'd,* 734 F.2d 10 (4th Cir.1984). The date of the last disbursement was November 20, 1989. As a result, any claim for breach of fiduciary duty based on this loan would have to be brought no later than November 20, 1995. This lawsuit however, was commenced on April 10, 1996, almost five months later. Accordingly, FGH maintains that the plaintiffs' ERISA claims as to it are time barred. *See Martin v. National Bank,* 828 F.Supp. 1427, 1431 (D.Alaska 1993) (recognizing that where the loan is the alleged unlawful transaction, the

statute of limitations runs from the date the loan was made).

The plaintiffs respond that their claims are governed by the exception for cases of "fraud or concealment." As a result, the six year period runs from the "date of discovery of the alleged violation" not the date of the loan. *See* 29 U.S.C. § 1113; *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 919 (2d Cir.1989).

The "fraud or concealment" exception contained in section 1113 incorporates the common law doctrine of fraudulent concealment, which operates "to toll the statute of limitations until the plaintiff in the exercise of reasonable diligence should have discovered the alleged fraud or concealment." *J. Geils Band Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1252 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172–74 (D.C.Cir.1994); *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1093–96 (7th Cir.1992); *Schaefer v. Arkansas Medical Soc'y*, 853 F.2d 1487, 1491–92 (8th Cir.1988). Although the Second Circuit has not directly addressed the issue, at least one district court in this circuit has held that the doctrine includes both situations where the fraud or concealment "consists of covering up prior ERISA violations" as well as self concealing wrongs. *Petrilli v. Gow*, 957 F.Supp. 366, 370, (D.Conn.1997); *accord J. Geils Band Benefit Plan*, 76 F.3d at 1253 n. 9; *see Wolin v. Smith Barney, Inc.*, 83 F.3d 847, 852 (7th Cir.1996) (distinguishing between self concealing acts on the one hand, namely acts committed during the course of the fraud which have the effect of concealing the fraud, and other ERISA violations which the actor subsequently attempts to conceal). The Second Circuit has recognized that application of the fraud or concealment exception is appropriate where the plaintiff can demonstrate common law fraud, namely: (1) a material false representation or omission of an existing fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, (4) reasonable reliance, and (5) damages. *Diduck v. Kaszycki & Sons Contractors, Inc.*,

974 F.2d 270, 275–76 (2d Cir.1992); *Gruby v. Brady*, 838 F.Supp. 820, 831 (S.D.N.Y.1993). Other circuit courts, apparently focusing on the "concealment" element, apply the exception where the plaintiff demonstrates that: (1) the defendants engaged in a course of conduct designed to conceal evidence of the alleged wrongdoing; (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of reasonable diligence. *J. Geils Band Benefit Plan*, 76 F.3d at 1255; *Larson*, 21 F.3d at 1172. Indeed, the Second Circuit has alluded to this latter definition in other contexts. *See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir.1995) (considering similar elements while addressing the doctrines of fraudulent concealment and equitable tolling in the context of a section 1983 claim). Further, it is the plaintiffs' burden to plead with particularity under Fed.R.Civ.P. 9(b) the events giving rise to a claim of fraud or concealment. *J. Geils Band Benefit Plan*, 76 F.3d at 1255; *Larson*, 21 F.3d at 1173; *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987); *see Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir.1983) (applying the heightened pleading standard to fraudulent concealment claim in securities fraud action). To satisfy the particularity requirement of Rule 9(b), the allegations should "specify the time, place, speaker, and sometimes content of the alleged misrepresentations." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), *citing, Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

Applying these standards the Court finds that the plaintiffs have failed to allege facts sufficient to warrant application of the "fraud or concealment" exception to the statute of limitations set forth in section 1113. In their opposing papers, the plaintiffs rely on the following allegations in support of their position that they are entitled to the protection of section 1113's tolling provision.

19. The closing of the Loan Transaction took place on November 20, 1989 (the "Closing"). At the Closing, FGH required,

and was provided with, the following certifications from the Training Fund, Union and Building Corporation (collectively, the "Certifications"):

a. A certification dated November 20, 1989 executed by LaBarbara, purportedly as Secretary of the Board of Trustees of the Training Fund, which provided, among other things, that at a special meeting of the Trustees of the Training Fund held on November 15, 1989, the Trustees unanimously approved and authorized the Training Fund to be a co-borrower of a $4,000,000 loan from FGH and to give a first mortgage on the Training Fund's Medford Property, and further authorized LaBarbara to execute all documents required by such transactions (the "Training Fund Certification");

b. A certification dated November 20, 1989 executed by Abbatiello, purportedly as Secretary of the Union, which provided, among other things, that at a special meeting of the Executive Board of the Union held on November 15, 1989, the Board members unanimously approved and authorized the Union to be a Guarantor of a $4,000,000 loan from FGH to the Building Corporation and Training Fund, and further authorized LaBarbara to execute all documents required by such transactions (the "Union Certification"); and

c. A certification dated November 20, 1989 executed by Abbatiello, purportedly as Secretary of the Building Corporation which provided, among other things, that at a special meeting of the Board of Directors of the Building Corporation held on November 15, 1989, the Directors unanimously approved and authorized the Building Corporation to be a co-borrower on a $4,000,000 loan, from FGH and to give a first mortgage on the Building Corporation's Melville Property, and further authorized LaBarbara to execute all documents required by such transactions (the "Building Corporation Certification").

20. FGH knew or should have known that the special meetings described in the Cer-

tifications never occurred, and that the governing bodies of the Training Fund, Union and Building Corporation never otherwise authorized those entities to enter into any of the agreements required by the Loan Transaction.

21. The Loan Transaction, the Certifications, the Closing, and underlying agreements were fraudulently concealed from Plaintiffs, the general membership of the Union, and the participants and beneficiaries of the Training Fund, and were entered into in violation of Defendants' fiduciary duty and in excess of their authority.

Compl. ¶¶ 19–21.

The allegations set forth above are insufficient to survive the FGH's motion to dismiss based on a statute of limitations defense. The amended complaint alleges that the Former Trustees misrepresented that they had the necessary approval and authorization to undertake the Loan Transaction. There are no allegations however, as to how these misrepresentations were concealed by fraud or otherwise. There is only the single conclusory allegation that "the Loan Transaction, the Certifications, the Closing, and underlying agreements were fraudulently concealed." Rule 9(b) requires that the plaintiffs identify the time, place and actor involved in the concealing conduct. Moreover, the plaintiffs do not even specify whether they are alleging that the fraud was self concealing, and if so, how or whether the Former Trustees engaged in subsequent conduct to disguise their fraud.

Further, the plaintiffs do not allege when they discovered the alleged concealing activity. Although the plaintiffs contend that "timeliness is an affirmative defense to be pled and proven by defendants," the Court has already determined that application of the "fraud or concealment" provision of section 1113 places the burden of pleading adequate facts under the heightened standards of Fed.R.Civ.P. 9(b) on the plaintiffs. *J. Geils Band Benefit Plan,* 76 F.3d at 1255. Accordingly, the plaintiffs are not entitled to protection under the "fraud or concealment" exception of section 1113, and without such support, the 6 year statute of limitations commenced running on November 20, 1989,

the date of the loan transaction and expired on November 20, 1995, five months prior to the commencement of this lawsuit. As a result, FGH's motion to dismiss the ERISA claims against it, pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

■ In reaching this conclusion however, the Court notes that Fed.R.Civ.P. 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350 ("[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing of prejudice or bad faith"). Accordingly, because it is possible that the plaintiffs may be able to allege sufficient facts to support application of the "fraud or concealment" exception, they are granted leave to file a second amended complaint pursuant to Fed.R.Civ.P. 15.

### 2. *State breach of fiduciary duty claim*

■ In a footnote, FGH argues that the eighth cause of action for breach of fiduciary duty under New York Labor Law section 725(3) should be dismissed because it is preempted under ERISA. ERISA preempts any state law cause of action which "relate[s] to" a covered employee benefit plan. *See* 29 U.S.C. § 514(a). The Second Circuit, in a lengthy discussion of ERISA preemption, has recognized that in general, ERISA preempts any state law that refers to or has a connection with a covered benefit plan even if the law is not specifically designed to affect such plans or the effect is indirect and even if the law is consistent with the statute's substantive requirements. *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561, 573 (2d Cir.1995).

The only substantive allegations contained in this cause of action, which incorporates all other allegations by reference, state:

66. By virtue of the actions described above, FGH knowingly participated in the actions of LaBarbara, Abbatiello and Vario which constituted breaches of fiduciary duties. The participation includes, but is not limited to, engaging in the Loan Transaction with the Training Fund, the Building Corporation and the Union under the terms which violate Section 406(a) of ERISA, 29 U.S.C. § 1106(a).

Compl. ¶ 66.

The plaintiffs maintain that this claim is not preempted because it addresses FGH's alleged involvement with the LaBarbara, Abbatiello and Vario in their capacities as Union officers, not as former trustees of the Training Fund. According to the opposition papers, the fact "[t]hat the Union officers involved are also Training Fund fiduciaries is not relevant to the merits of plaintiff's state law claims." Pl. Mem. of Law at 10.

In the Court's view, the eighth cause of action is preempted. Even if the plaintiffs were attempting to state a cause of action for breach of fiduciary duty against the three individual defendants only in their capacities as Union officers and not as Trustees, the allegations contained in the amended complaint fail to make this distinction. Rather, as stated above, the eighth cause of action incorporates all prior allegations by reference and then states only that the Former Trustees are liable for breach of fiduciary duty under state law for engaging in, among other things which are not set forth, an action prohibited under ERISA, 29 U.S.C. § 1106(a). Such a claim initially turns on whether the alleged unlawful activity, namely the loan transaction, violates section 1106. As a result, the Court finds that the relationship between this eighth cause of action and ERISA is sufficiently close to be preempted under 29 U.S.C. § 514.

However, similar to the analysis with respect to the federal claims, the Court cannot determine whether amendment of the plaintiffs' claims pursuant to New York Labor Law section 725(3) would be futile. Accordingly, the plaintiffs are granted leave to re-

plead this cause of action. *See* Fed.R.Civ.P. 15; *Zahra*, 48 F.3d at 685; *Block*, 988 F.2d at 350.

### 3. *The remaining state law claims*

■ FGH's final argument is that, if the federal claims are dismissed, the remaining state law claims against it should also be dismissed for want of subject matter jurisdiction. Pursuant to 28 U.S.C. § 1367(a), the federal court has supplemental jurisdiction over those claims that "are so related" to the claims within the court's original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." A Court however, may "decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (addressing the doctrine of "pendent jurisdiction," the predecessor to "supplemental jurisdiction"). In a more recent case, the Second Circuit has recognized that a district court may address the merits of related state law claims after ERISA claims were dismissed where there was a close relationship between the claims. *See Finz v. Schlesinger*, 957 F.2d 78, 83–84 (2d Cir.), *cert. denied*, 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992).

Applying these standards, the Court, in an exercise of its discretion, declines to dismiss the remaining state law claims against FGH on supplemental jurisdiction grounds. Assuming that the plaintiffs are unable to re-plead their ERISA claims against FGH, their federal claims still exist as to the remaining defendants. Accordingly, because the issues between the federal claims against these defendants and the state law claims against FGH are so closely linked, the Court finds that it would be more efficient to address these claims in a single litigation. *See Jones v. Village of Villa Park*, 784 F.Supp. 533, 535 (N.D.Ill.1992) (recognizing that where federal claims are dismissed as to a single defendant, the Court may retain subject matter jurisdiction over that defendant where the state law claim is sufficiently related to the federal claims against the remaining defendants). As a result, FGH's motion to dismiss the remaining state law claims as to it is denied.

### III. *Conclusion*

Having reviewed the parties' submissions, as well as the Court file, it is hereby

ORDERED, that the defendant FGH's motion to dismiss the federal causes of action as to it, brought pursuant to ERISA, 29 U.S.C. §§ 1001 et seq., is granted, without prejudice; it is further

ORDERED, that the defendant FGH's motion to dismiss the eighth cause of action for breach of fiduciary duty pursuant to New York Labor Law section 725(3) is granted without prejudice; it is further

ORDERED, that the defendant FGH's motion to dismiss the remaining state law claims for lack of subject matter jurisdiction is denied; and it is further

ORDERED, that the plaintiffs are granted leave to file a second amended complaint consistent with this Memorandum of Decision and Order within 30 days from the date of this Memorandum of Decision and Order.

SO ORDERED.