PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NANCY ROSS BARRON,
            *Plaintiff-Appellant,*

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

            *Defendant-Appellee.*

No. 01-1065

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-99-3708-WMN)

Argued: June 5, 2001

Decided: August 6, 2001

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Irene M. KEELEY, Chief United States District Judge
for the Northern District of West Virginia,
sitting by designation.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Chief Judge Wilkinson and Chief Judge Keeley
joined.

_____

## COUNSEL

**ARGUED:** Stephen Mark Tilghman, SEIDEL, BAKER & TILGH-
MAN, P.A., Salisbury, Maryland, for Appellant. John Snowden Stan-

ley, Jr., SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee. **ON BRIEF:** Edgar A. Baker, Jr., SEIDEL, BAKER & TILGHMAN, P.A., Salisbury, Maryland, for Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

In exchange for a lump-sum payment of long-term disability benefits, Nancy Ross Barron gave a general release to UNUM Life Insurance Company of America as administrator of her employee benefit plan. When Barron had a claim five years later against a different employee benefit plan, of which UNUM coincidentally was also the administrator, UNUM relied on this general release to deny Barron benefits.

Citing the broad language of the general release, the district court entered summary judgment in favor of UNUM. Because we conclude (1) that UNUM could not, consistent with its fiduciary duty, rely on the release involving a different plan to deny Barron benefits and (2) that, in any event, the scope of the release language was not sufficiently broad to cover Barron's claim, we reverse.

I

Nancy Barron was diagnosed with multiple sclerosis ("MS") in 1974, at a time when she was employed by Advanced Computer Techniques in New York, and she consequently began receiving long-term disability benefits under Advanced Computer Techniques' employee benefits plan ("the Advanced Computer Plan"). Those benefits were obtained by Advanced Computer Techniques through insurance policy number 012543 issued by UNUM Life Insurance Company of America ("UNUM"). UNUM was also the administrator of the plan. By the terms of the Advanced Computer Plan, Barron was entitled to receive long-term disability payments until August 11, 2008, if she remained totally disabled.

Following inquiries by Barron to UNUM about receiving her benefits in a lump sum for each year or about compromising all future

benefits, the parties reached a settlement under which UNUM, as plan administrator, paid Barron a lump sum of $36,000 for all future liability under the plan in exchange for a "Settlement Release" (the "Release"), which Barron executed on May 24, 1993. The Release provided in relevant part:

2. Upon execution by me of this Settlement and Release, UNUM will pay me the sum of $36,000.00 in addition to benefits provided to date, if any, as full, final, and complete satisfaction and settlement of its past, present, and future liability to me under Policy Number 012543.

3. I understand that by signing this Settlement and Release, I am forever relinquishing any and all claims I have or may have against UNUM, including, but not limited to, any claim for additional benefits from UNUM under Policy Number 012543 and that this is a legally binding document. I also understand and acknowledge that I have the right to have this Settlement and Release reviewed by an attorney and/or other personal, financial or medical advisor(s) prior to signing this Settlement and Release.

After Barron's MS went into remission and approximately 16 months after Barron signed the Release, she returned to work. After working for several different employers, she commenced work on September 15, 1997, for Comcast Cablevision of Delmarva, Inc. as a customer service representative. As a full-time employee, Barron became a participant in the Comcast Corporation employee benefits plan ("the Comcast Plan") and began paying participating premiums. The Comcast Plan provided for short-term and long-term disability benefits through insurance policy number 36711 that it had obtained, coincidentally, from UNUM. This plan was also administered by UNUM.

Effective January 1, 1998, the Comcast Plan obtained a revised policy from UNUM. This plan applied without a waiting period to "all full-time employees [working at least 30 hours per week] and sales people in active employment" as of January 1, 1998. Employees who became covered on January 1, 1998, were not required to provide evidence of insurability. The Comcast Plan, however, did not

provide long-term disability benefits to employees with a "pre-existing condition." Under the terms of the plan, a plan participant has a pre-existing condition if (1) the participant received medical treatment during the three months before the effective date of coverage *and* (2) the disability began within 12 months of the effective date of coverage.

There is no suggestion in the record that Barron's prior MS condition was a preexisting condition under the terms of the Comcast Plan because there is no evidence that she was receiving any medical treatment for MS during the three months before January 1, 1998. Indeed, when MS symptoms did reappear in March 1998, Barron stated (as recorded by a UNUM claims adjuster) that "she didn't go to a Doctor for many years for MS — all of a sudden had flare up — had been in remission — no treatment — working — no problem."

After working on Saturday, February 28, 1998, Barron suffered the "flare up" of her MS symptoms. She experienced dizziness, double vision, and numbness in her hands. Instead of returning to work, she went to her doctor on March 3, 1998, who confirmed that the symptoms were caused by MS.

A couple of days later, Barron submitted an application to her benefits representative for short-term disability benefits under the Comcast Plan. UNUM, as administrator of the plan, provided the short-term benefits. As the symptoms persisted, however, Barron applied for long-term benefits. By this time, UNUM discovered that it had been the administrator of the Advanced Computer Plan sponsored by Barron's previous employer and had, in connection with Barron's disability benefits under that plan, obtained a settlement and a general release from Barron running in favor of UNUM. Accordingly, on June 16, 1998, UNUM denied Barron's long-term disability benefits under the Comcast Plan, stating:

> Per our conversation and our discovery upon further research of your claim, you had previously signed a Settlement Release with UNUM on 5/24/93. A copy of that Release is enclosed (a copy will not be provided to your employer). This Release precludes you from filing any additional claims against UNUM.

In a subsequent letter, UNUM explained that Barron's settlement under the Advanced Computer Plan released UNUM not only from "any future claims under Policy Number 012543" (the Advanced Computer Plan), but also "any other UNUM policy." Because UNUM provided long-term benefits to the Comcast Plan through UNUM policy number 36711, UNUM concluded that when Barron had signed the Settlement Release in 1993, she "relinquished" her rights under policy number 36711 issued to Comcast Corporation. UNUM relied on the general release language in which Barron stated, "I am forever relinquishing any and all claims I have or may have against UNUM, including, but not limited to, any claim for additional benefits from UNUM under policy number 012543 [the Advanced Computer Plan]."

Barron commenced this action against UNUM for a judgment declaring that the Release, which she had executed in May 1993, "[was] not a bar to Nancy Barron's claim for longterm disability benefits under UNUM Policy Number 36711 [the Comcast Plan]" and that policy number 36711 "was in effect . . . in March 1998" when she became disabled. Barron also sought an injunction directing UNUM "to process Nancy Barron's request for long-term disability benefits, beginning in June 1998, in accordance with the usual underwriting standards of the Company with regard to disability determinations."

Barron filed a motion for summary judgment to obtain the relief she requested, and UNUM filed a cross-motion for summary judgment, relying solely on the Release to support its position. The district court, concluding that the Comcast Plan gave UNUM discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of that plan, held that UNUM did not abuse its discretion "in denying Plaintiff's claim for long-term disability on the basis of the May, 1993 Release" in view of the Release's language providing that the Release was not limited to policy number 012543. Accordingly, the court denied Barron's motion for summary judgment and granted UNUM's cross-motion for summary judgment. Barron noticed this appeal.

## II

Barron contends first that even though UNUM, as administrator of the Comcast Plan, is given discretion to interpret its provisions, it

"breached its fiduciary duty to [her] and made a determination based on the self-interest of UNUM, rather than pursuant to the terms of the plan." She argues that "by making a decision based upon the language of a 1993 release, rather than in accordance with the documents and instruments governing the current ERISA plan with Comcast Corporation," UNUM violated its duties as a fiduciary under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Barron also contends that even if the Release is relevant to a claim made under the Comcast Plan, the Release's terms do not reach future claims such as the one she made against the Comcast Plan. We address these arguments in order.

A

The Comcast Plan, under which Barron has made her claim for long-term benefits, specifies that the Plan Administrator is Comcast Corporation. Comcast Corporation provided long-term disability benefits to its employees through policy number 36711 obtained from UNUM, effective January 1, 1998. This policy designates UNUM as the administrator of the insurance benefits provided by policy number 36711 and states that "Plan means a line of coverage under the policy." As an administrator of insurance benefits provided by the Comcast Plan, UNUM is given discretionary authority "to determine [employees'] eligibility for benefits and to interpret the terms and provisions of the policy."

Policy number 36711 directs that claims for benefits be submitted to UNUM and that any suit against UNUM be filed within three years "from the time proof of claim is required." Barron filed her claim with UNUM and was denied benefits in June 1998 based on the Release. She then timely commenced this action against UNUM and filed a motion for summary judgment. UNUM again defended itself on the basis of the Release. And when the district court entered judgment in favor of UNUM, it based its decision on the Release. Accordingly, we must determine whether UNUM could rely on the Release to deny Barron's claim for benefits under the Comcast Plan. We treat Barron's request for a declaratory judgment as a civil action to clarify

rights under the terms of the Comcast Plan, as authorized by 29 U.S.C. § 1132(a)(1)(B).

When a plan, such as the Comcast Plan before us, vests an administrator with discretion, we review the administrator's actions in interpreting the plan and in denying claims for abuse of discretion. *See Haley v. The Paul Revere Life Ins. Co.*, 77 F.3d 84, 88-89 (4th Cir. 1996). The interpretations of the plan to which this discretion applies, however, are only those for which the ERISA plan itself explicitly vests discretion in the administrator. Thus, UNUM's interpretation of the Release is given deference under the abuse of discretion standard only if the Release could be considered part of the Comcast Plan and only if the Comcast Plan so vests discretion in UNUM. Otherwise, we review UNUM's decision *de novo*. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000) (noting that "the scope of contractually conferred discretion and whether a fiduciary has acted within that scope" is reviewed *de novo*).

As an employer, Comcast Corporation undertook to provide its employees with long-term disability benefits through an insurance policy purchased from UNUM, and it designated UNUM as an administrator under its plan to provide those benefits. *See* 29 U.S.C. § 1002(16)(A). As an administrator, UNUM was a fiduciary, *see id*. § 1002(21)(A), and was obliged to discharge its duties as administrator "solely in the interest of the participants and beneficiaries," *id*. § 1104(a)(1). ERISA prohibits a fiduciary from "dealing with the assets of the plan in its own interest." *Id*. § 1106(b).

When UNUM obtained the Release, it was acting as a fiduciary under the Advanced Computer Plan, limiting that plan's exposure to further payments. While obtaining such a release was clearly within UNUM's authority as a fiduciary to resolve claims under that plan, what it obtained through the Release could only be used to serve the interests of the Advanced Computer Plan and not those of UNUM personally. *See* 29 U.S.C. §§ 1104(a)(1), 1106(b). Even though the Release states that it bars claims against *UNUM*, UNUM was acting for the American Computer Plan and *all* benefits obtained by UNUM in its role as fiduciary of that plan belonged to the plan. *See* 29 U.S.C. § 1106(b); *cf.* 29 U.S.C. § 1132(d). Indeed, § 1106(b)(3) prohibits a fiduciary from "receiv[ing] *any* consideration for his own personal

account from any party dealing with such plan in connection with a transaction involving the assets of the plan." (Emphasis added). Therefore, the Release, which UNUM obtained as a fiduciary of the Advanced Computer Plan, ran only to the benefit of the Advanced Computer Plan and could not be used by UNUM to advance its own personal financial interest when administering other plans.

Yet, in administering the Comcast Plan, UNUM, in the purported exercise of its discretionary authority, relied on the Release, which was unrelated to the Comcast Plan, to deny benefits that Comcast Corporation had authorized for its employees. We can find no language in the Comcast Plan authorizing UNUM to apply a release given with respect to benefits administered under another plan to bar the payment of benefits. Nor can we find any provision that authorizes the Comcast Plan or UNUM to deny benefits based on claims made against another plan or based on a release obtained against the administrator in connection with another plan. More particularly, we can find no reference to the Release being applicable to benefits provided under the Comcast Plan. The only explanation for UNUM's use of the Release obtained in connection with the Advanced Computer Plan to bar benefits under the Comcast Plan is UNUM's interest in reducing its insurance risk under the Comcast Plan. As counsel for UNUM acknowledged, "all legal obligation or liability for payment of claims made under the [Comcast Plan] *ultimately rests with UNUM*." (Emphasis added). Yet, this interest in reducing its own personal liability would conflict with its duty to apply the Comcast Plan's language and, if permitted, would amount to a breach of fiduciary duty.

In sum, because the Release was not a written term of the Comcast Plan, UNUM was not interpreting any term of the plan when it relied on that Release to deny coverage. Rather, it attempted, as administrator of the Comcast Plan, to take advantage of a release obtained by it as an administrator of the Advanced Computer Plan to reduce its insurance risk under the policy supplied to Comcast Corporation. But its fiduciary responsibility requires it to act solely in the interest of the Comcast Plan beneficiaries in accordance with the plan documents adopted by the plan's sponsor, Comcast Corporation. While the suit here names UNUM, the administrator of the Comcast Plan, as defendant — which is authorized by the Plan language — the effect of the

suit is against the Comcast Plan itself. *Cf.* 29 U.S.C. § 1132(d)(1) ("Service of summons, subpena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan").

While UNUM would have authority under the Comcast Plan to obtain a release in connection with the settlement of a claim made against the Comcast Plan and apply that release to a second claim against the same plan to bar a claim for benefits, its duty as administrator of the Comcast Plan must not be confused with its duties as administrator of other plans and must not be compromised by its interest in administering other plans. In short, its duty to the Comcast Plan must be undivided. *See* 29 U.S.C. §§ 1104(a), 1106(b). At oral argument, counsel for UNUM recognized that if Barron had named the Comcast Plan as the named defendant in this case — as it could have, *see* 29 U.S.C. § 1132(d) — the Release might not have been relevant. Instead, UNUM's counsel attempted to distinguish UNUM's policy from the Comcast Plan in an effort to distance the two. But this effort reveals the tension between UNUM's duty to serve the Comcast Plan and its desire to serve its own interest.

Thus, we conclude that even if UNUM had a release from Barron that released UNUM from all further payments of any kind, the Release so obtained was for the benefit of the plan to which it related and could not have been applied to other plans. Even though the Release was general and nominally ran in favor of UNUM, UNUM could not, consistent with its fiduciary responsibilities, apply the Release under another plan to bar a claim under that other plan. Accordingly, we hold that the Release does not bar Barron's claim for benefits under the Comcast Plan.

B

Even if we could focus solely on the language of the Release itself without considering UNUM's statutory fiduciary duties, our conclusion would not change.

In 1993, Barron had a right to ongoing benefits under the Advanced Computer Plan, and had she remained disabled, her rights would have continued to the year 2008. To compromise those benefits

in the face of future risks, the parties chose to negotiate a settlement for a lump-sum payment in discharge of the plan's obligations. Through the "Settlement Release" dated May 23, 1993, both Barron and the Advanced Computer Plan clearly intended to extinguish Barron's rights to any future benefits under the plan (which the Release refers to as policy number 012543). The Release states that the lump-sum payment is in "complete satisfaction and settlement of [UNUM's] past, present, and future liability to [Barron] under Policy Number 012543." The next paragraph reaffirms this, providing Barron's agreement: "I am forever relinquishing any and all claims I have or may have against UNUM, including, but not limited to, any claim for additional benefits from UNUM under Policy Number 012543."

To support its contention that this Release was a general release covering UNUM's liability under the Comcast Plan, UNUM points to the language that Barron was relinquishing "all claims I have or may have against UNUM." Implicit in that language, however, is the idea that any such released claim was related to a transaction, conduct, or event involving UNUM and to a transaction, conduct, or event that was known or could have been known to the parties. The general release language therefore applied only to UNUM-related transactions, conduct, or events that occurred before the Release was executed, even though the claim might arise in the future. UNUM cannot claim that this language released UNUM from future claims arising out of transactions, conduct, or events that had not yet occurred when the Release was executed. If such a release were consistent with public policy, it surely would have had to employ language much more explicit than the language used in the Release to be enforceable for the purpose asserted by UNUM.

In addition, as we noted above, when UNUM secured the Release, it was acting as a fiduciary *on behalf of* the Advanced Computer Plan. While it acted on behalf of the plan in limiting the plan's future exposure, it could not derive from that Release benefits for its own personal account — benefits that it could claim in administering other plans and reducing its costs in connection with them. Therefore, in construing the Release language, we do not read it so broadly as to give UNUM independent personal benefits when acting on behalf of another plan.

Finally, the language of the Release clearly does not extend to release claims against the Comcast Plan as an entity. *See* 29 U.S.C. § 1132(d) (noting that plans may sue or be sued "as an entity"). Because it does not reach so broadly and because UNUM, in administering the Comcast Plan, was acting only on behalf of that plan, language running to UNUM personally could not be used to bar a claim against the Comcast Plan.

Accordingly, even the terms of the Release do not reach so broadly as to bar Barron's claim for benefits under the Comcast Plan.

### III

In sum, as an employee of Advanced Computer Techniques, Barron had a right, because of her MS, to long-term disability benefits from that company's employee benefit plan, a right that she and the plan compromised for a lump-sum payment in exchange for a release. The Release relinquished claims against UNUM as the plan's administrator.

Because of a remission of her disability, Barron was able to return to work, and she ultimately worked for Comcast Corporation, where she became enrolled in the Comcast Plan. Under the terms of that plan, despite Barron's prior disability history, she was not disqualified from benefits so long as she had not received medical treatment for her disability within three months of becoming enrolled in the plan. After working symptom-free at Comcast Corporation for almost six months — and almost five years after executing the Release — Barron's disability "flared up," qualifying her for benefits under the terms of the Comcast Plan. Even though UNUM happened to be the insurer and administrator of this plan also, it was not entitled to interpose the Release as a bar to benefits. The Release was obtained for the Advanced Computer Plan, not the Comcast Plan.

Our conclusion is based on the principles that, in connection with each plan, UNUM was acting independently as a fiduciary for the plan and not on its own behalf, and that the Release obtained in connection with Barron's claim against the Advanced Computer Plan could not be used to bar a claim made by her against the Comcast Plan. To permit this use of the Release would serve only UNUM and

amount to a breach of its fiduciary duties to both the Advanced Computer Plan and the Comcast Plan. Our conclusion is based also on the limited scope of language in the Release.

Accordingly, we reverse the judgment of the district court and remand for that court's determination whether Barron should be paid attorneys fees, as authorized by 29 U.S.C. § 1132(g).

*REVERSED AND REMANDED*