**Constantinos ANTONIOU, Plaintiff,**

v.

**THIOKOL CORPORATION GROUP LONG TERM DISABILITY PLAN (PLAN NO. 503), Defendant.**

No. 93–285–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

March 28, 1994.

---

Denise Elaine Vaughan, Wagner, Vaughan & McLaughlin, P.A. and Raymond T. Elligett, Jr., Schropp, Buell & Elligett, P.A., Tampa, FL, for plaintiff.

Charles W. Pittman, Macfarlane, Ausley, Ferguson & McMullen and Charles Chandler Lane, Lau, Lane, Pieper & Asti, P.A., Tampa, FL, for defendant.

## CORRECTED ORDER ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S THIRD AFFIRMATIVE DEFENSE AND ON PLAINTIFF'S AND DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT ON RELEASE

KOVACHEVICH, District Judge.

This cause comes before the Court on Plaintiff's motion to strike Defendant's "third" affirmative defense, pursuant to Rule 12(f) Fed.R.Civ.P., and on Plaintiff's and Defendant's cross-motions for summary judgment on release, pursuant to Rule 56, Fed. R.Civ.P. Plaintiff's motion to strike was filed December 2, 1993 (Dkt. 26). Defendant's memorandum in opposition was filed December 20, 1993 (Dkt. 29). Plaintiff's motion for summary judgment on release was filed January 6, 1994 (Dkt. 31). Defendant's combined memorandum in opposition and motion for summary judgment was filed January 31, 1994 (Dkt. 34). Plaintiff's response to Defendant's motion for summary judgment on release was filed February 14, 1994 (Dkt. 37).

### FACTUAL BACKGROUND

Thiokol Corporation ("Thiokol") employed Plaintiff, Constantinos Antoniou ("Antoniou"), as a cook aboard the ship FREEDOM STAR. As a Thiokol employee, Antoniou was covered under the Thiokol Corporation Group Long Term Disability Plan ("Plan"). In January, 1988, Antoniou was injured in the course of his employment and filed suit against his employer. After mediation, Antoniou and his wife settled their Jones Act case against Thiokol by executing a release agreement in consideration of $150,000.

At the time the Antonious signed the release, Mr. Antoniou was receiving long-term disability payments from the Plan; he had been receiving periodic payments under the Plan since 1988. For eight months following execution of the release Antoniou continued to receive the disability payments. In early January, 1992 the Plan notified Antoniou that his long-term disability benefits were terminated effective December 31, 1991. In the notice, the plan administrator stated the ter-

mination was due to the release signed by the Antonious.

After Defendant Plan refused to reinstate Antoniou's benefits, he filed the instant action, February 18, 1993 (Dkt. 1) In its answer Defendant Plan asserted two affirmative defenses (Dkt. 2). The Plan first alleges it is entitled to offset the full $150,000, paid pursuant to the settlement agreement, against benefits due under Antoniou's disability plan. Second, the Plan states that Antoniou released Thiokol from any and all claims arising out of the January 1988 injury; Defendant assumed that the release of Thiokol also released the Plan. The Plan then moved for leave to amend its answer to include a "third" affirmative defense.[1] (Dkt. 24) Leave to amend was granted over Plaintiff's objection as argued in its memorandum in opposition (Dkt. 25). The "third" defense asserted by the Plan essentially argues that the long term disability plan provides for subrogation rights, and a corresponding reduction of benefits, where there is a recovery from a third party. This "third" affirmative defense is the subject of Plaintiff's motion to strike.

### MOTION TO STRIKE DEFENDANT'S "THIRD" AFFIRMATIVE DEFENSE

Plaintiff asserts that Defendant's "third" affirmative defense is barred under the Employee Retirement and Income Security Act (ERISA) and should therefore be stricken pursuant to Rule 12(f) Fed.R.Civ.P. Rule 12(f) provides:

> [T]he Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Based upon exhibits and deposition testimony Plaintiff essentially argues that the "third" affirmative defense is insufficient. However, matters outside the pleadings, such as affidavits or depositions must be disregarded in an analysis under a Rule 12(f) motion to strike. *Carlson Corp./Southeast v. Seminole County School Bd.*, 778 F.Supp. 518 (M.D.Fla.1991). "An affirmative defense should not be stricken where there is a bona

fide question of fact." *Royal Palm Savings Assn. v. Pine Trace Corp.*, 716 F.Supp. 1416, 1420 (M.D.Fla.1989), citing *A.M. Kidder & Co. v. Turner*, 106 So.2d 905, 906 (Fla.1958). "The standard that must be met is undisputed: only if a defense is insufficient as a matter of law will it be stricken." *Anchor Hocking Corp. v. Jacksonville Electric Authority*, 419 F.Supp. 992, 1000 (M.D.Fla. 1976), citing *Systems Corp. v. AT & T Co.*, 60 F.R.D. 692 (S.D.N.Y.1973); *Carter–Wallace, Inc. v. Riverton Labs, Inc.*, 47 F.R.D. 366, 367–68 (S.D.N.Y.1969). Arguing against the motion, Defendant suggests that a determination of the issues raised by Plaintiff's motion to strike would be more properly dealt with in the context of a summary judgment motion. The Court agrees with this suggestion, and will consider Plaintiff's arguments raised in this motion to strike when properly raised in a motion for summary judgment.

### PLAINTIFF'S AND DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT ON RELEASE

### STANDARD OF REVIEW

■■■ This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Ry. Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment. The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "In our view the plain language of Rule 56(c) mandates the entry of a summary judgment after adequate time for discovery and upon motion, against a party who fails to establish the

---

1. The new defense asserted by the Plan in its amended answer is really just an additional argument to its first affirmative defense. However, this "third" defense does provide a potential

independent basis for denying relief. Therefore, the court will refer to this new argument, as have the parties in their memoranda, as "defendant's third affirmative defense."

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." The Court also said, "Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

## DISCUSSION

As previously stated, Defendant Plan's second affirmative defense asserts that the release signed by Antoniou in favor of Thiokol Corporation also releases the disability plan. Both parties seek entry of summary judgment in their favor on this issue.

■ The proper analysis in evaluating who the Antonious released by the agreement begins by looking to the terms of the release agreement itself. The express language of the agreement provides:

> "[I]n consideration of the sum of One Hundred Fifty Thousand Dollars ... [the Antonious] have released, remised, acquitted and forever discharged and hereby do release, remise, acquit and forever discharge the Motor Vessel FREEDOM STAR, her master, crew, owners, charterers and underwriters, including Thiokol Corporation as successor in interest to Morton, Thiokol, Inc. Connecticut Bank & Trust Company and each of them, and each of their respective heirs, personal representatives, successors and assigns."

The release does not in any way reference the Defendant disability plan.

Defendant Plan argues that because Thiokol is the Plan's sponsor, administrator, and ultimate "decision making entity" the Plan and Thiokol are essentially one in the same for purposes of the release. The Court does not agree. Under ERISA, the law recognizes the separate existence of employee benefit plans. "An employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1). Further, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person

is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). Accordingly, because Thiokol and the Plan are properly recognized as separate legal entities and the release agreement by its express and unambiguous terms does not release the Defendant Plan, the Court finds as a matter of law that the Plan was not released by the agreement signed by the Antonious on April 8, 1991.

The Court reaches this conclusion without regard to the Plan's arguments and references to extrinsic evidence as to Thiokol's subjective intent in entering the release agreement. In its lengthy memorandum of law, Defendant Plan suggests that Thiokol subjectively intended that the release agreement would also release the Plan. Assuming arguendo that extrinsic evidence is appropriate in this scenario, the Plan's argument is unavailing. The references to the deposition transcript of Thiokol's Risk Management Director, Terry Gilbreth, (Dkt. 28) do not, as the Defendant argues, reflect that Thiokol's subjective intent was to release the Plan.

In its memorandum of law, Defendant Plan first cites to the Gilbreth deposition, pages 49–50, lines 21–4. That referenced section is as follows:

> Q Okay. I'm sorry, I don't understand your—it does not necessarily mean—I don't know if you're agreeing with me or you're saying no, it wouldn't necessarily include it.
>
> A It wouldn't necessarily include it. Because I think the settlement that was made with Antoniou on his Jones Act and the maritime statute claim was a global settlement encompassing all liabilities of that nature.

The Plan also cites to the Gilbreth deposition, page 72 line 13–23. That referenced section is as follows:

> Q Other than that language, is there anything you see in here that indicates that the Plan has been released?
>
> THE WITNESS: Do I answer that?
>
> MS. FANNING: Objection; legal conclusion. You can answer.
>
> THE WITNESS: There's nothing I see in the Plan that would limit the release to Thiokol Corporation in whatever role it

played, whether as an employer or as Plan administrator and sponsor.

As may be plainly observed, neither of these quoted sections reveals anything about Thiokol's subjective intent regarding the release of the Plan at the time the release agreement was made. The first quoted section merely reveals Mr. Gilbreth's post hoc assessment that the agreement was a "global settlement including all liabilities;" it does not suggest anything about Thiokol's subjective intent to include the Plan in the release. The second quoted section likewise does not enlighten. It merely demonstrates Mr. Gilbreth's post hoc legal interpretation of the agreement.

The deposition testimony of Brendan O'Sullivan (Thiokol's attorney in the Jones Act case and the drafter of the release agreement) (Dkt. 36) clearly demonstrates that the Plan was not even considered in reaching the settlement agreement. Moreover, it is clear from the record that the Plan continued to pay Antoniou approximately $1,300 per month for eight months following the signing of the release. It is inconceivable that, if the parties to the release intended that it should also operate to release the Plan, the Plan would continue to pay Antoniou over $10,000 during the next eight months. The evidence set forth in the deposition testimony accompanying the parties' motions and memoranda of law demonstrates that Thiokol had no subjective intent to release the Plan when the release agreement was entered. Also, contrary to the Plan's argument, Terry Gilbreth's deposition does not give rise to a disputed issue of material fact on this issue.

■ Additionally, and consistent with this Court's earlier opinion in this case,[2] under federal maritime law, the release should be construed as effective only as to those parties Antoniou (as a seaman) intended to release. *See Cates v. United States*, 451 F.2d 411 (5th Cir.1971). Since the Court's earlier ruling in this case the parties stipulated to the fact that Antoniou was injured in the course of his employment as a *seaman*. Antoniou's affidavit filed with his earlier motion (Dkt. 7) demonstrates: (1) that at the time of the mediation and subsequent execution of the release agreement he was receiving disability benefits; (2) that there was no indication that settling the tort action would eliminate his disability benefits; and (3) that Antoniou did not intend to release his disability benefits.

Regardless of whether the release is construed under general common law principles as applied under ERISA, or under federal maritime law, the Court finds that Defendant Plan was not released by the agreement signed by the Antonious. The Court finds that there are no genuine issues of material fact regarding the effect of the release agreement on the Defendant Plan.

Accordingly, it is

ORDERED that Plaintiff's motion to strike Defendant's "third" affirmative defense is **DENIED**. It is further

ORDERED that Plaintiff's motion for partial summary judgment on release is **GRANTED**. The Clerk shall enter a final judgment in favor of Plaintiff on this issue. Defendant's motion for summary judgment on release is **DENIED**.

**DONE and ORDERED.**

---

2. *Antoniou v. Thiokol Corporation Group Long Term Disability Plan*, 829 F.Supp. 1323 (M.D.Fla. 1993).