**Maureen K. SULLIVAN, Plaintiff,**

v.

**CAP GEMINI ERNST & YOUNG U.S., et al., Defendants.**

**Case No. 1:06CV00283.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 26, 2008.

David Webster, Webster & Dubyak, Cleveland, Jack F. Fuchs, Thompson Hine, Cincinnati, OH, for Plaintiff Maureen Sullivan.

James P. Baker, Jones Day, San Francisco, CA, Jeffrey Saks, Jones Day, Cleve-

land, OH, for Defendant Capgemini U.S. Vice President Disability Plan.

Mark E. Schmidtke, Schmidtke Hoeppner Consultants, Valparaiso, IN, for Defendants Paul Revere and TBG.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This case involves a claim for long-term disability benefits by the plaintiff, Maureen Sullivan ("Sullivan" or "Plaintiff"). In a prior decision, this Court granted summary judgment in favor of defendant Cap Gemini Ernst & Young U.S. ("CGEY"), Sullivan's former employer, based upon a release (the "Waiver") validly executed by and among Sullivan and CGEY. *Sullivan v. Cap Gemini Ernst & Young U.S.*, 518 F.Supp.2d 983 (N.D.Ohio 2007) ("*Sullivan I*"). Following that decision, Sullivan moved to amend her complaint to add as an additional defendant the Capgemini U.S. LLC Vice President Disability Plan (the "Plan"). (Doc. No. 61.) That motion went unopposed and was granted summarily by the Court. Sullivan's second amended complaint asserted a claim against the Plan for wrongful denial of benefits under ERISA § 502(a)(1)(B). (Doc. No. 66.) This claim is virtually identical to the one previously asserted by Plaintiff against CGEY and upon which the Court granted summary judgment in CGEY's favor.

The matter is now before the Court on several motions filed by the Plan and by Sullivan. The Plan filed a motion for summary-judgment. (Doc. No. 73.) Sullivan followed with a motion to strike the Plan's motion for summary judgment. (Doc. No. 84.) Sullivan later filed a motion for judgment on the administrative record. (Doc. No. 104.) Each motion has been briefed exhaustively.

Together the motions raise one overarching dispositive issue: whether the Waiver Sullivan signed, which the Court previously held released her claim for benefits against CGEY, also bars her from asserting the same claim against the Plan. In order to reach that issue, the Court first must resolve several procedural questions.

## I. Factual and Procedural History

The facts are set forth in detail in the Court's prior decision, familiarity with which is presumed. *See Sullivan I*, 518 F.Supp.2d at 985–988.

Sullivan worked as a vice president at CGEY, and was a participant in the Plan, which included, inter alia, a short-term disability plan ("STD Plan") and a long-term disability plan ("LTD Plan"). Under the coverage provided by the LTD Plan, if deemed totally disabled, Sullivan would be eligible to receive tax-free payments totaling $288,000 per year. CGEY purchased insurance policies covering $78,000 of that amount, and self-insured another $150,000 portion. The final $60,000 was covered by insurance paid for by Sullivan.

Only the self-insured portion of the LTD Plan is now at issue.

## II. Law and Analysis

Preliminarily, the Court must decide the applicable standard of review. The Plan seeks summary judgment under Rule 56. Sullivan objects to this procedural device, arguing instead that the Court should review the administrative record to determine whether the Plan abused its discretion. Sullivan asks the Court to strike the Plan's motion for summary judgment.

### A. Sullivan's Motion to Strike the Plan's Motion for Summary Judgment

■ The Court previously employed the summary judgment procedure at the request of both Sullivan and CGEY. Sullivan

did not object at that time. In fact, she argued that summary judgment in her favor was appropriate (*see* Pl.'s Mot. for Partial Summ. J., Doc. No. 48), though the Court ultimately decided otherwise. In the Court's earlier decision, it was noted that judgment on the administrative record, not summary judgment, ordinarily is the appropriate means of resolving a claim for wrongful denial of benefits under ERISA. *Sullivan I*, 518 F.Supp.2d at 990 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir.1998)). The Court found, however, that the typical administrative review contemplated by *Wilkins* did not apply, and summary judgment was appropriate, due to the contractual nature of CGEY's waiver defense, and the fact that no administrative record existed with regard to Sullivan's claim under the self-insured portion of the LTD Plan. *Id.* Specifically, the Court reasoned that

[t]he procedure for obtaining such review in an ordinary denial of benefits case under ERISA, post-*Wilkins*, is by motion for judgment on the administrative record. This case, however, distinguishes itself from the ordinary wrongful denial of benefits case in several respects. Notably, there is essentially no administrative record to speak of regarding CGEY's denial of Sullivan's request for benefits under the LTD Plan. Most importantly for purposes of the instant motions is the fact that CGEY interposes the Waiver as a complete defense to Sullivan's claims. The Waiver is a contract. In contract actions, summary judgment may be appropriate when the documents and evidence underlying the contract are undisputed and there is no question as to intent. *Man-*

ley v. Plasti–Line, Inc., 808 F.2d 468, 471 (6th Cir.1987) (citation omitted).

*Sullivan I*, 518 F.Supp.2d at 990.

Thus, CGEY successfully brought before the Court the issue of the Waiver's effect on Sullivan's claim and obtained a ruling in its favor without drawing from Sullivan any objection to the summary judgment procedure or the admissibility of the Waiver based upon *Wilkins*. After Sullivan filed the second amended complaint (without any objection),[1] the Plan subsequently sought to defend Sullivan's newly asserted claim on the same ground upon which CGEY had prevailed by filing a motion for summary judgment premised upon the Waiver. This time, however, Sullivan, advised by new counsel, interposed an objection to the procedure, arguing in her motion to strike that, pursuant to *Wilkins*, summary judgment is not appropriate, and the Court's review at this stage must be confined to the administrative record.

In his concurring opinion in *Wilkins*, Judge Gilman,[2] attempting to provide guidance to resolve the "great confusion among district courts," elaborated on the type of review to be conducted in cases such as this one, involving claims for wrongful denial of benefits under ERISA, 29 U.S.C § 1132(a)(1)(B). 150 F.3d at 617. Judge Oilman rejected two then-common approaches for resolving such cases—conduct of a bench trial on the merits under Fed.R.Civ.P. 52, and summary judgment under Fed.R.Civ.P. 56–as inappropriate and inconsistent with the Circuit's prior treatment of the issue in *Perry v. Simplicity Eng'g*, 900 F.2d 963 (6th Cir.1990), in which the court issued the following procedural guidance:

---

1. Any assertion by Sullivan that the Court passed on the merits of her claims against the Plan by permitting the filing of the second amended complaint is unfounded. The Court was not presented with a futility argument, or any other objection, in opposition to the mo-

tion for leave, and therefore granted the motion as unopposed.

2. Judge Ryan joined Judge Gilman's concurrence, and thus it garnered a majority of the panel deciding the case.

[T]he district court will review the administrator's decision *de novo*, that is without deference to the decision or any presumption of correctness, based on the record before the administrator. Thus [*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)] does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim. This view is consistent with the proper judicial role in ERISA cases and precedent.

*Wilkins*, 150 F.3d at 618 (citing *Perry*, 900 F.2d at 966).

■ Building upon the framework established by *Perry*, Judge Gilman issued the following directions:

1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

3. [...] [T]he summary judgment procedures set forth in Rule 56 are inappo-

site to ERISA actions and thus should not be utilized in their disposition.

*Id.* at 619. In both its discussion of the defects in the prior (Rule 52 and Rule 56–based) procedures and in its prescriptive guidance, Judge Gilman's concurrence in *Wilkins* clearly preserved a single exception to the general rule that the district court's review is limited to the administrative record; "The only exception to the [...] principle of not receiving new evidence at the district court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* at 618 (citing *VanderKlok v. Provident Life & Accident Ins. Co., Inc.*, 956 F.2d 610, 617 (6th Cir. 1992)).

Since *Wilkins*, the Sixth Circuit has endorsed Judge Gilman's concurring opinion as the controlling law on the subject, and has hewn unswervingly to its mandates. Subsequent decisions state, in no uncertain terms, that "[t]here can be no dispute that in this circuit, in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 522 (6th Cir.1998) (citing *Perry*, 900 F.2d at 966). Consistent with *Wilkins*, the only exception to the rule remains the one articulated by Judge Gilman concerning procedural challenges to the administrator's decision, which may include violations of procedural due process and allegations of bias by the administrator. Thus, the Court must determine whether this case fits within the exception.[3]

---

**3.** Rather than addressing the issue strictly in terms of *Wilkins*, the Plan defends the propriety of summary judgment by reference to four distinct lines of authority: (1) the Court's

decision in *Sullivan I*; (2) cases outside the Sixth Circuit; (3) pre-*Wilkins* Sixth Circuit authority; and (4) a single post-*Wilkins* district court opinion from within the Sixth Cir-

Sullivan's claim raises, at least in pan, a procedural challenge to the Plan's decision. In the second amended complaint, Sullivan avers that she "attempted to contact CGEY to determine why she was not receiving the expected [benefit] payments," that she demanded the additional benefits she believed to be due under the LTD Plan, and that none of the defendants in this action responded affirmatively to her demands. (2d Am. Compl. ¶¶ 34–35.) Further, Sullivan alleges that the documentation concerning her disability benefits indicated only that claims should be submitted to UNUM, not to CGEY or the Plan. (*Id.* at ¶ 38.) Thus, Sullivan explicitly attacks the procedure applied to her claim, contending that "neither CGEY nor UNUM fully complied with the duties owed Sullivan in the administration of Sullivan's claims," (*id.* at ¶ 39) and seeks an order compelling the defendants to comply with the terms of the LTD Plan. (*Id.* at ¶ 47.)

■ So while Sullivan's claim has a substantive component (she contends she should prevail on her claim for benefits because she is totally disabled and her claim falls within the coverage provided by the terms of the LTD Plan (*see id.* at ¶¶ 41–43)), it also undeniably represents a procedural challenge. Sullivan asserts that the process afforded her claim by the defendants was defective, and asks the Court to order compliance with appropriate procedures. This is a challenge to the procedure applied by the defendants (including the Plan), not just the merits of the Plan's decision. Thus, Sullivan's claim fits within the exception articulated in *Wilkins* for procedural claims. Here, the Plan asserts that the procedure, or lack thereof, is justified because Sullivan waived any and all claims she may have had against the Plan. In order to evaluate the merits of that argument, the Court must refer to the Waiver. Accordingly, consideration of the Waiver is appropriate

cuit, *Oberlin v. S. Lorain Merchants Ass'n Health & Welfare Benefits Plan & Trust,* No. 3:06CV890, 2007 WL 438213, 2007 U.S. Dist. LEXIS 8547 (N.D.Ohio Feb. 6, 2007). The first three of these have obvious deficiencies. Citation to the Court's earlier decision in this case only begs the question whether the Court's conclusion was correct. The nonbinding precedents from outside the Sixth Circuit, as well as the Sixth Circuit cases decided before *Wilkins* are of no aid in determining the applicability of the specific procedural rule, set forth in *Wilkins,* which is unique to this Circuit. The district court ease cited by the Plan, while applying summary judgment, and apparently concerning a claim for benefits under an ERISA plan, does not cite to, much less distinguish, *Wilkins.* Accordingly, at best it stands for the availability of summary judgment in such a case only by implication. A close reading of the case, however, reveals that it supports Sullivan's position, not the Plan's, at least inasmuch as Sullivan advocates adherence to *Wilkins.* The Court in *Oberlin* expressly complied with *Wilkins* in confining its review to evidence that was presented to the administrator. In de-

scribing the burden of proof where the plaintiff had shown that the plan would have covered the treatment received by the plaintiff but for the defendant's adverse coverage determination, the court explained that the burden was with the defendant to establish that the pre-existing condition exclusion applied. *Oberlin,* 2007 WL 438213, at *2, 2007 U.S. Dist. LEXIS 8547, at *5 (citation omitted). In doing so, the defendant "has the burden of producing documents, to the court and in the administrative record, that can compare the later treatment with the records of the alleged pre-existing condition." *Id.* at *2, 2007 U.S. Dist. LEXIS 8547, at *5–6. After finding that the administrative record lacked sufficient evidence to prove the applicability of the exclusion, the district court concluded that the defendant's decision was arbitrary and capricious and granted the plaintiff summary judgment. *Id.* at *2–3, 2007 U.S. Dist. LEXIS 8547, at *6–8. Thus, despite its facial application of summary judgment, *Oberlin* does not depart substantively from *Wilkins.* The Plan's arguments, therefore, do not aid resolution of this issue.

because it is "necessary to resolve [Sullivan's] procedural challenge to the administrator's decision." *Wilkins,* 150 F.3d at 618.

Sullivan's motion to strike the Plan's motion for summary judgment is premised entirely upon *Wilkins,* its admonition against summary judgment in this type of case, and its limitation of review to the administrative record. As a close analysis of the opinion reveals, it is not the label "summary judgment" that *Wilkins* abhors. Rather, it is the review of evidence not contained in the administrative record by the district court, which ordinary summary judgment procedures would permit, that is barred under *Wilkins.* As explained previously, however, reference to evidence outside the administrative record, specifically to the Waiver, is necessary in this case and is appropriate under *Wilkins,* for two separate and independent reasons; (1) Sullivan asserts a procedural challenge; and (2) the Plan, like CGEY before it, interposes the Waiver as a complete defense to Sullivan's claim for LTD benefits.[4] Accordingly, Sullivan's motion to strike the Plan's motion for summary judgment is denied.

## B. The Plan's Motion for Summary Judgment

The Plan seeks summary judgment in its favor, arguing, alternatively, that res judicata bars Sullivan's claims, that the Plan is not a proper party defendant, and

that the Waiver nevertheless bars any claims asserted by Sullivan against the Plan. The Court addresses these arguments seriatim.

### 1. Res Judicata Does Not Apply

The Plan's res judicata argument is misplaced. The Court's order granting summary judgment in favor of CGEY was interlocutory,[5] and therefore subject to later modification by the Court. Res judicata requires that the order being asserted as claim preclusive be a final order. *See Reich v. Youghiogheny & Ohio Coal Co.,* 66 F.3d 111, 115 (6th Cir.1995) (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107–08, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); *Maxwell Co. v. NLRB,* 414 F.2d 477, 479 (6th Cir.1969)). An interlocutory order is, by definition, not a final order, and therefore is not elevated to res judicata status. *Temple v. Temple,* 172 F.3d 49, 1998 WL 939535, at *4 (6th Cir. Dec.21, 1998) (unpublished) (citing *FDIC v. Massingill,* 24 F.3d 768, 774 (5th Cir.1994)); *Franzen v. CSX Transp., Inc.,* 983 F.2d 1066, 1992 WL 377074, at *2 (6th Cir. Dec. 18, 1992) (unpublished); *In re Upjohn Co. Antibiotic Cleocin Prods. Liability Litig.,* 664 F.2d 114, 119 (6th Cir. 1981). Accordingly, the Court's prior order cannot be given preclusive effect.

### 2. The Plan is a Proper Party Defendant

The Plan argues that it is not a proper defendant in this action, asserting that Sul-

---

4. Even absent Sullivan's procedural challenge, the Plan's assertion of the Waiver as a complete defense distinguishes this case from the garden-variety ERISA denial of benefits action. *See Sullivan I,* 518 F.Supp.2d at 990. *See also Parisi v. Kaiser Found. Health Plan Long Term Disability Plan,* No. C 06–04359, 2008 WL 220101, at *3 (N.D.Cal. Jan. 25, 2008) (consideration of release, which was not part of administrative record, differed from review of post-denial medical evidence because release was central to the defendant's

affirmative defense of waiver, which was reviewed de novo).

5. An order disposing of fewer than all parties or claims in an action is non-appealable. *See* Fed.R.Civ.P. 54(b); *William B. Tanner Co., Inc. v. United States,* 575 F.2d 101, 102 (6th Cir.1978) (per curiam) (citations omitted). At the time the Court granted summary judgment in favor of CGEY, Sullivan's claims against the other defendants in this action remained pending.

livan's former employer, CGEY, which professes to be the plan administrator, is the only appropriate defendant.[6] In support of this contention, the Plan cites the Sixth Circuit's statement that "[u]nless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.) (citation omitted), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

In her rejoinder to this argument, Sullivan cites several cases, including *Jameson v. Bethlehem Steel Corp.*, 714 F.2d 140, 1983 U.S.App. LEXIS 12902, at *2 (6th Cir. June 10, 1983) (unpublished), *Whitworth Bros. Storage Co. v. Central States Se. & Sw. Areas Pension Fund*, 794 F.2d 221, 224 n. 2 (6th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986), and *Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir.1999), which, in turn, rely on the statutory language in 29 U.S.C. § 1132(d), establishing that a plan "may [ . . . ] be sued," and that "[a]ny money judgment [ . . . ] against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person [ . . . ]." The statute, however, does not address when it is appropriate to sue the plan, but provides only that the plan is, in fact, subject to suit. *Renney v. White Consol., Indus., Inc.*, No. G88–408 CAI, 1990 WL 482748, at *7 (W.D.Mich. Apr. 8, 1990), *aff'd*, *Renney v. A.B. Electrolux*, 952 F.2d 403 (6th Cir.1992) (unpublished) ("While ERISA provides that an employee benefit plan may be sued as an entity, 29 U.S.C. section 1132(d)(1), it does not explicitly identify the proper party defendant in a suit by a plan participant or beneficia-

ry to recover benefits under the terms of a plan.")

While 29 U.S.C. § 1132(d)(1) alone does not establish conclusively that a plan is a proper party defendant to an action under § 1132(a)(1)(B) to recover benefits, the statutory scheme, when viewed collectively, persuades the Court that the Plan is an appropriate defendant in this action. Section 1132(a)(1)(B), which establishes the right of action invoked here by Sullivan, provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" Moreover, § 1132(d)(2) provides that any judgment obtained in such an action is enforceable only against the plan. Thus, ERISA establishes clearly that a plan is a separate legal entity subject to suit, and that any judgment rendered in an action for benefits under § 1132(a)(1)(B) is enforceable only against the plan. These provisions, coupled with the persistent references to the "plan" in the subsection creating the cause of action, convince the Court that the plan is an appropriate defendant in this action, where Sullivan asserts a claim for benefits under § 1132(a)(1)(B) seeking benefits to which she asserts entitlement under the terms of the LTD Plan.

*Daniel*, which forms the sole legal basis for the Plan's position,[7] simply does not stand for the proposition that only the plan administrator is a proper defendant in an action to recover benefits under § 1132(a)(1)(B). Rather, *Daniel* established that an employer is not a proper defendant unless it controlled administration of the plan. *Daniel* did not address

---

**6.** CGEY, of course, was relieved of any potential liability by the Court's prior order based upon the Waiver.

**7.** All the other authorities from within this circuit cited by the Plan in support of this argument refer back to *Daniel*.

whether, and under what circumstances, the plan is a proper defendant. The Plan's construction of *Daniel,* and any district court cases arguably supporting that construction,[8] read the decision too broadly.

Moreover, there is no shortage of cases from within the Sixth Circuit addressing the merits of a claim for benefits against a plan where an entity other than the plan, whether the sponsoring employer or unrelated third-party, served as the administrator. *See, e.g., Univ. Hosps. of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839 (6th Cir.2000); *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368 (6th Cir.1994); *Tiemeyer v. Cmty. Mut. Ins. Co.,* 8 F.3d 1094 (6th Cir.1993). In such cases, there is not even a hint that the plan was not a proper party to the action because it was not the administrator. None of the cases referenced *Daniel.* While such cases merely provide inferential support for the propriety of naming the plan as a defendant, the

strength of that inference is, in light of the statutory' language, impossible to ignore.[9]

### 3. The Waiver Applies to the Plan

■ The Plan maintains that the Waiver, negotiated by and between Sullivan and CGEY, which the Court previously held effectuated a release of Sullivan's long-term disability claims under ERISA against CGEY, also encompasses claims against the Plan. In its prior opinion, the Court addressed the enforceability and scope of the Waiver, and concluded that it was entered into knowingly and voluntarily, and that its broad language operated to release Sullivan's claim for long-term disability benefits. *Sullivan I,* 518 F.Supp.2d at 992–97. The Court also concluded, consistent with Sullivan's position, that the disability for which she now seeks payment is the same one for which she received short-term disability payments from CGEY, with an inception date that predated the Waiver.[10] *Id.* at 998. The substan-

8. *See, e.g., Kmatz v. Metro., Life Ins. Co.,* 458 F.Supp.2d 553, 559 n. 3 (S.D.Ohio 2005) (characterizing *Daniel* as holding that "a party who is not a plan administrator is not a proper defendant in an ERISA action[.]")

9. If *Daniel* means what the Plan says it means, then all such cases were (at least potentially) decided incorrectly, as the district courts should have dismissed the plans as improper party defendants.

10. Sullivan now argues that, pursuant to *Rosenbaum v. Davis Iron Works,* No. 88–1245, 1989 WL 36897, at *4–5, 1989 U.S.App. LEXIS 5223, at *12 (6th Cir. Apr. 19, 1989), *cert. denied,* 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989), her claim survived the Waiver because a release of claims against an employer will not constitute a "waiver as to future claims against the Plan." Whatever the continuing validity of *Rosenbaum* (and the parties spilled an inordinate amount of ink quibbling over that issue), it is irrelevant to the case at bar because (as the Court held previously and reaffirms now) Sullivan's claim for long-term disability benefits relates to the same disability for which she previously sought and received benefits

while she was employed with CGEY. 518 F.Supp.2d at 998. The inception date of that claim predates the Waiver. *Id.* It is, therefore, not a future claim, but a claim that existed when the Waiver was signed, at which time Sullivan agreed to "waive any claims I have or may believe I have [...] whether known or unknown [...]." Indeed, before this Court decided the cross-motions for summary judgment filed by Sullivan and CGEY, it was Sullivan who argued, and convinced the Court to conclude, that "while the status of her [disability] claim was subject to change, she was clearly under a single claim at all times, with a Commencement Date in June 2002 (long before her employment was terminated)." *See* Pl.'s Br. in Support of Mot. for Partial Summ. J., Doc. No. 49, at 7; *Sullivan I,* 518 F.Supp.2d at 998. Accordingly, Sullivan is judicially estopped from arguing the contrary now. *Cf. New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (reciting applicable factors). Judicial estoppel protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50, 121 S.Ct. 1808 (citation omit-

tive question left for resolution by the instant motion is whether the release contained in the Waiver extends to the Plan. It is undisputed mat the Plan as an entity was not a party to the Waiver, and is not mentioned explicitly therein.

This particular question never has been addressed by the Sixth Circuit or, it seems, by any district court within this circuit. Decisions outside this circuit come down on both sides of the issue.

In support of her contention that the Waiver did not release the Plan, Sullivan cites *Hubbert v. Prudential Ins. Co. of Am.*, No. 96–1093, 1997 WL 8854, 1997 U.S.App. LEXIS 434 (10th Cir. Jan. 10, 1997).[11] In *Hubbert*, the Tenth Circuit concluded that a release executed by the plaintiff and his former employer did not release claims against the plan because the two "are [ . . . ] separate entities, and a release of one does not operate to release the other." *Id.* at *3, 1997 U.S.App. LEXIS 434, at *12. In reaching this conclusion, the court in *Hubbert* relied on two subsections of the statutory scheme, § 1132(d)(1), providing that a plan can sue and be sued as a separate entity, and § 1132(d)(2), stating that a money judgment against the plan is enforceable only

against the plan as an entity, as well as a single district court case, *Antoniou v. Thiokol Corp. Group Long Term Disability Plan*, 849 F.Supp. 1531, 1534 (M.D.Fla. 1994).

In *Antoniou*, also cited by Sullivan, the district court addressed an argument just like the one asserted by the Plan, that a release signed by the plaintiff in favor of his employer also released the disability plan. Like the Waiver in this case, the release in *Antoniou* did not mention the plan by name. *Id.* at 1534. The defendant plan argued, as the Plan does here, that because it was the plan sponsor, administrator, and decision-maker, the plan and the employer effectively were the same for purposes of the release. *Id.* The district court disagreed, relying upon §§ 1132(d)(1) & (2), and finding that the employer and the plan properly were recognized as separate legal entities. The court in *Antoniou* therefore concluded that the release, which "by its express and unambiguous terms [did] not release the Defendant Plan," did not effectuate a release of the plaintiff's disability claims against the plan. *Id.*

In support of its position that the Waiver extends to claims against the Plan, the

---

ted). The Court finds the doctrine applies to bar Sullivan's belated attempt to switch positions regarding the inception date of her disability claim.

**11.** Sullivan also cites *Unum Life Ins. Co. of Am. v. Cappello*, 278 F.Supp.2d 228 (D.R.I. 2003), and *Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Retirement Income Trust*, 191 F.Supp.2d 223 (D.Mass.2002). *Cappello* is distinguishable because in that case the district court was bound by a prior order finding that the waiver was ambiguous as to whether it covered the plaintiff's claim for long-term disability benefits, and therefore resort to extrinsic evidence was appropriate. 278 F.Supp.2d at 233. There is no such ambiguity in the Waiver. Moreover, the release at issue in *Cappello* did not involve an employer and its self-sponsored, self-funded

plan, but rather was negotiated and executed by Factory Mutual Insurance Company (the successor to Cappello's employer), which apparently was unaffiliated with UNUM, the party from which Cappello sought to recover disability benefits. *Laurenzano* adds little to the discussion of the legal issue in this case. *Laurenzano* relied exclusively on two cases, one of which was *Antoniou*, which the Court declines to follow for the reasons stated herein, and the other was *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310 (4th Cir.2001), which is distinguishable because, among other reasons, the release at issue in that case was obtained by UNUM in connection with a separately administered and unrelated plan (the "Advanced Computer Plan"), and therefore was simply inapplicable to the plan at issue in the case (the "Comcast Plan"). 260 F.3d at 315–16.

Plan cites *Bordonaro v. Union Carbide Corp.*, No. Civ.A. 01–1177, 2002 WL 32824 (E.D.La. Jan. 11, 2002), and *Linder v. BYK–Chemie USA, Inc.*, No. 3:02 CV 1956(JGM), 2006 WL 648206 (D.Conn. Mar. 10, 2006):

In *Bordonaro*, the plaintiff had filed an earlier lawsuit against her employer, Union Carbide Corporation, alleging sexual harassment and intentional infliction of emotional distress. 2002 WL 32824, at *1. That lawsuit was settled and dismissed. *Id.* Approximately six years later, the plaintiff filed suit against, inter alia, Union Carbide and the Union Carbide Corporation Long Term Disability Plan, claiming entitlement to long-term disability benefits under ERISA. *Id.* The defendants claimed that the release executed in connection with the earlier settlement was broad enough to extinguish the plaintiff's long-term disability claim. The release named "Union Carbide Corporation, its parent, subsidiary, affiliated, related, companion, predecessor or successor corporations, their agents, representatives, officers, employees, successors and assigns," but did not mention the plan. *Id.* at *2. The plaintiff cited *Antoniou* in arguing that the release did not discharge the plaintiff's claim against the plan. The court in *Bordonaro* acknowledged that, pursuant to § 1132(d)(1), a plan could sue or be sued as a separate entity, but disagreed with the holding of *Antoniou*, instead finding that "the separate legal status of a plan from the employer company is not steadfastly maintained in all situa-

tions." *Id.* Specifically, the district court concluded that "[f]or purposes of contract interpretation, there is nothing that compels the conclusion that an ERISA benefits plan, for all purposes, must be considered a distinct entity from that of the establishing entity." *Id.* at *3. This conclusion relied heavily on *Slaughter v. AT & T Info. Sys., Inc.*, 905 F.2d 92 (5th Cir.1990), in which the Fifth Circuit held that, in an ERISA action against an employer and its unfunded benefit plan, the real party in interest was the employer, and the plan was merely a nominal defendant. Thus, the court in *Bordonaro* held that Union Carbide and the Union Carbide plan were the same entity for purposes of interpreting the release, and therefore the plan, like Union Carbide, was discharged from the plaintiff's claim for long-term disability benefits. 2002 WL 32824, at *3.

Likewise, in *Linder*, the district court agreed completely with the statement in *Bordonaro* that nothing compelled a conclusion that a plan was distinct from its sponsor for purposes of contract interpretation. 2006 WL 648206, at *10. Consistent with *Bordonaro* and *Slaughter*, the court found that the plan was merely a nominal defendant, and the real party in interest was the employer, so the language of the release covering claims against the employer also was effective as to the plan. *Id.* at *11. The court in *Linder* also distinguished *Antoniou* on the basis that the plaintiff sought benefits from an unfunded "top hat" ERISA plan.[12] *Id.* *Bordonaro*, however, did not distinguish *Antoniou* on this basis;[13] rather, it rejected its reason-

**12.** According to *Linder*, a "top hat" plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 2006 WL 648206, at *10 (citing 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)). "'A plan is unfunded where benefits thereunder will be paid ... solely from the general

assets of the employer.'" *Id.* (quoting *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir.2000)).

**13.** Indeed, the court in *Bordonaro* expressly characterized its facts as "remarkably similar" to those in *Antoniou*, 2002 WL 32824, at *2 n. 1.

ing in reliance upon *Slaughter.* Thus, if the Court agrees with the reasoning of *Bordonaro,* it makes no difference whether the Plan is a top hat plan.[14]

In a case decided only recently (and after briefing on the pending motions was completed), a district court was asked to decide on summary judgment whether a release executed between a plaintiff and his employer extended to the long-term disability plan sponsored by the employer based upon the language in the release covering the employer's "agents, employees, officers, directors, successors and assigns[.]" *Goepfert v. Trustmark Ins. Co.,* 541 F.Supp.2d 1052, 1055–56 (E.D.Wis. 2008). The district court stated that when a release includes language referring to the employer's agents, employees, officers, etc., and does not suggest that it applies only when the company acts in certain specific capacities, the release applies to the employer acting in any of its capacities. *Id.* (citing *Fair v. Int'l Flavors & Fragrances, Inc.,* 905 F.2d 1114, 1116 (7th Cir.1990)). Furthermore, "ERISA does not require an employee benefit plan to be explicitly named in an exculpatory agreement even though suit may be commenced against the plan as an entity." *Id.* at 1056 (citing *Howell v. Motorola, Inc.,* No. 03 C 5044, 2005 WL 2420410, at \*7 (N.D.Ill. Sept. 30, 2005)).

In *Howell,* the district court rejected the plaintiff's contention that a release was Ineffective as to the defendant plan because the plan was not named expressly in the release. The court in *Howell* explained that

> although ERISA permits suits against an employee benefit plan as an entity, 29 U.S.C.A. § 1132(d) ("an employee benefit plan may sue or be sued under this subchapter as an entity"), nowhere does ERISA mandate that the [Motorola, Inc.

401(k) Profit Sharing] Plan be specifically named in an exculpatory agreement. In this case, the broad language of the Release included all affiliates of Motorola. Howell would be hard-pressed to argue that any of the Defendants he named in this lawsuit were not affiliates, including the Profit Sharing Committee of Motorola. Thus, under the plain language of the release, it applies to all Defendants.

2005 WL 2420410, at \*7.

In reliance upon *Howell,* the court in *Goepfert* reasoned as follows:

> HCE's [Howell's employer] Release explicitly covers ERISA claims against HCE, "its officers, shareholders, employees, affiliates, parents, successors and assigns." The term "affiliate" signifies a close association with another entity, a branch organization, or a business concern owned or controlled in whole or in part by another concern. According to plaintiff's amended complaint, HCE is the sponsor and administrator of the Plan, fully named Hyundai Construction Equipment, Inc. Employee Group Long Term Disability Plan. The Plan is an entity established by HCE, acting in its capacity as an employer seeking to provide benefits to its employees, would not exist separate and apart from HCE, and therefore is closely associated with HCE. Moreover, given that ERISA specifically provides for suit on ERISA claims against a benefit plan as a separate entity, see 29 U.S.C. § 1132(d), and the Release In the present case expressly includes ERISA claims within its scope, it seems clear that the release would therefore apply to HCE's employee benefit plan.

---

**14.** Although the Plan argues that the portion of the LTD Plan at issue is, in fact, a "top hat"

ERISA plan, the Court expressly declines to make any finding in that regard.

541 F.Supp.2d at 1056 (internal citations omitted). Accordingly, the court held that the defendant plan was an affiliate of the employer, and therefore claims against the plan were encompassed by the release. *Id.*

Thus, while the positions taken by Sullivan and the Plan each find solid support, the cases (despite the parties' best efforts) cannot be reconciled. The court in *Antoniou* concluded that the release did not apply to the plan based upon the statutory language in § 1132(d) providing that a plan is a separate legal entity from its sponsoring employer, and a judgment obtained in an action under § 1132 is enforceable only against the plan. By contrast, cases such as *Bordonaro* and *Goepfert* reject this conclusion, and instead hold that the separate legal status accorded a plan by § 1132(d)(1) does not mean that a plan must be separately identified in a release in order for the release to encompass claims against the plan.[15]

Although the question is a close one, the Court finds the reasoning in *Bordonaro* and *Goepfert* more persuasive. While § 1132(d)(1) undeniably establishes the plan's separate legal existence and its capacity to be sued, it does not answer the specific question before the Court, i.e., whether a release must explicitly refer to an ERISA plan in order to be enforced against the plan. The Court agrees with *Goepfert* that it need not do so. This case and *Goepfert* are indistinguishable. Here, the Waiver explicitly covered ERISA claims against CGEY and its "affiliates."[16] As in *Goepfert*, CGEY was the Plan's sponsor and, with respect to the self-insured portion under which Sullivan seeks benefits, its administrator. (*See* CGEY Response to Interrogatory No. 3, at 8, attached as Ex. A to Decl. of James P. Baker, dated Nov. 8, 2007, Doc. No. 73–5; *see also* Baker Decl., Ex. B, copy of email dated July 31, 2005, from Fred Howarth to Plaintiffs' counsel Mr. Webster; Baker Decl., Ex. C, Summary Plan Description dated July 1, 2004 ("SPD")).[17] The Plan was established by CGEY for the benefit of eligible employees, including Sullivan.

15. The only conceivably distinguishing factor is that the release at issue in *Antoniou* did not expressly suite that it applied to "affiliates" of the employer. By its terms, the release applied to "the Motor Vessel FREEDOM STAR, her master, crew, owners, charterers and underwriters, including Thiokol Corporation as successor in interest to Morton, Thiokol, Inc. Connecticut Bank & Trust Company and each of them, and each of their respective heirs, persona! representatives, successors and assigns." *Antoniou*, 849 F.Supp. at 1534. However, the court expressly rejected the plan's argument that it and the employer were "essentially one in the same for purposes of the release." *Id.* Thus, this Court cannot conclude reasonably that the court in *Antoniou* would have decided the case differently if the release had contained the term "affiliate."

16. The Waiver provides, "I hereby release CGEY, its parents, affiliates, [ . . . ] and each of their predecessors, successors, assigns, and transferees (the "Releasees") from all actions, causes of action, complaints[ . . . ] of any kind, whether known or unknown, suspected or unsuspected, that I [ . . . ] ever had, now have or may hereafter claim to have against the Releasees arising on or before the date this Agreement is executed by me (the "Waiver"). This Waiver includes, but is not limited to, any and all claims arising from, or in connection with, my employment with CGEY or my separation from this employment, including, but not limited to, any and all rights or claims [ . . . ] arising under [ . . . ] [ERISA]."

17. Sullivan argues in a footnote, without authority, that the Plan cannot rely on the SPD submitted with its motion because it is dated July 1, 2004, and thus post-dates the Waiver. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4 n.7.) The Court rejects this argument. The relevant contents of the SPD relied upon by the Court in this decision stand uncontroverted by Sullivan. Moreover, even if the SPD is disregarded, the undisputed evidence in the record establishes that the Plan is an affiliate of CGEY.

(2d Am. Compl. ¶ 1.) As the administrator, CGEY expressly reserved the right to determine whether a participant was eligible to receive self-funded benefits. (SPD at 14.) Accordingly, the Court concludes that CGEY and the Plan are so closely associated as to be "affiliates" within the meaning of the Waiver.[18] Therefore the Waiver released the Plan from any and all ERISA claims asserted by Sullivan, including the claim for benefits asserted in this action. Because the Waiver bars Sullivan's claims against the Plan, summary judgment in the Plan's favor is warranted.

### C. Sullivan's Motion for Judgment on the Administrative Record[19]

The parties agree that the arbitrary and capricious standard of review applies to this case. (*See* Pl.'s Mot. for J. on Admin. Record at 8.)[20] Under that standard, the Court must affirm the administrator's decision if the record evidence establishes a reasonable basis for the decision. *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693–94 (6th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990). The Court must determine whether the Plan's decision to deny Sullivan's claim was "the result of a deliberate, principled reasoning process [...] supported by substantial evidence." *Glenn v. Met-Life*, 461 F.3d 660, 666 (6th Cir.2006)

(quoting *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

Having concluded that Sullivan's claim against the Plan is barred by the Waiver, the Plan's decision to deny the claim was supported by a reasoned explanation based upon the evidence. Accordingly, the Plan's decision was not arbitrary and capricious. Sullivan's motion for judgment on the administrative record is denied.

### III. Conclusion

For the foregoing reasons, Sullivan's motion to strike the Plan's motion for summary judgment is **DENIED**, the Plan's motion for summary judgment is **GRANTED**, and Sullivan's motion for judgment on the administrative record is **DENIED**. All pending claims in this action having been resolved,[21] this case is **DISMISSED**.

**IT IS SO ORDERED.**

---

18. Sullivan's effort to distinguish *Linder* and *Bordonaro* on the ground that the plans in those cases were funded solely from the assets of the employer, while in this case, the Plan is funded only partially by CGEY's general assets, is unavailing. Contrary to Sullivan's argument, those cases simply do not rely on complete self-funding as the sine qua non of the type of close relationship between the employer and the self-insured plan justifying the conclusion that the plan is an affiliate of its sponsoring employer.

19. In its opposition to the motion, the Plan likens the motion to one for reconsideration under Rule 60(b). This argument is mis-

placed. The Court did not decide in its prior order the merits of the Plan's decision to deny Sullivan's claim for benefits. Indeed, the Plan was not a defendant at that time.

20. The Court notes that, due to the legal nature of the Plan's contractual defense, Sullivan's claim has received, in effect, de novo review.

21. The Court approved the stipulated dismissal of defendants TBG Financial West and UN-UMProvident Corporation on January 23, 2008. Defendant Paul Revere was dismissed pursuant to a stipulation by order dated March 10, 2008. (Doc. No. 110.)